Nicholas A. CLEMENTE, Plaintiff,

v.

Arnaldo F. ESPINOSA, Defendant.

Civ. A. No. 89–2021 (JED).

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1990.

Reconsideration Denied Oct. 19, 1990.

Alan M. Bredt, Philadelphia, Pa., for plaintiff.

Reeder R. Fox, Craig F. Turet, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Plaintiff Nicholas A. Clemente ("Clemente") instituted this action against defendant Arnaldo F. Espinosa ("Espinosa") on March 1, 1989 in the Philadelphia Court of Common Pleas, alleging causes of action for defamation and intentional infliction of emotional distress. The case subsequently was removed to this Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.

A Motion to Dismiss for, *inter alia*, lack of personal jurisdiction over Espinosa, as

well as for failure to state a claim for defamation and/or intentional infliction of emotional distress, was filed by defendant on March 28, 1989. This Court denied the Motion without prejudice to defendant's right to challenge the legal sufficiency of plaintiff's claims by Motion for Summary Judgment or at trial.

After a series of discovery disputes, defendant submitted on December 4, 1989 a Motion for Summary Judgment with respect to both the defamation and intentional infliction of emotional distress claims. On January 29, 1990 the Court granted the defendant's Summary Judgment Motion with regard to the intentional infliction of emotional distress claim. Respecting the defamation claim, defendant's Motion was denied.

Commencing on July 31, 1989 the case was tried before the Court sitting without a jury. For the reasons set forth in the following findings of fact and conclusions of law, the Court finds that (1) defendant published the statements alleged, (2) the statements were capable of defamatory meaning, (3) the statements were slanderous per se, and (4) plaintiff is entitled to recover an award of compensatory damages in the amount of $10,000.

## I. FINDINGS OF FACT AND DISCUSSION

### A. *Background*

Plaintiff Clemente is a Philadelphia attorney engaged in the practice of law as a member of the firm of Nicholas A. Clemente, P.C. Beginning in 1976, Clemente was retained by the trustees of the prepaid legal services fund for the United Food and Commercial Workers Union Local 1776 in Philadelphia, Pennsylvania ("Local 1776"). Under the contract, Clemente was to provide prepaid legal services to union members and their dependents. These services were financed by employer contributions to the Southeastern Pennsylvania Legal Services Plan, the prepaid legal services fund affiliated with Local 1776 ("the 1776 Legal Fund"). From 1982 to 1988, Clemente also provided prepaid legal services to employees and employee dependents of the United Food and Commercial Workers Union affiliated Local 919 in Hartford, Connecticut ("Local 919"). These services were paid for by employer contributions to two of Local 919's employee benefit funds, known as the Employer's (Food) Legal Services Trust Fund and the Employers' (Non–Food) Legal Services Plan (collectively "the 919 Legal Funds").

Defendant Espinosa is the chief executive officer of Local 919—a position he has held since 1954.[1] [N.T., August 1, 1990, at 13.] As chief executive officer of Local 919, Espinosa works with leaders of other locals, including affiliated locals in New England and Local 1776 in Philadelphia. [N.T., August 1, 1990, at 13.] He also serves as a trustee and a member of the Board of Trustees of the 919 Legal Funds. [N.T., Aug. 1, 1990, at 19.]

Wendell W. Young, III ("Young") at all pertinent times served as the chief executive officer of Local 1776. He continues to hold that position. [N.T., July 31, 1990, at 14.]

Prior to the events at issue, Clemente, Espinosa and Young enjoyed a close professional and personal affiliation. Young's association with Clemente began in 1956. [N.T., July 31, 1990, at 14, 98.] His relation with Espinosa dates back to approximately 1962. [N.T., July 31, 1990, at 14; August 1, 1990, at 14.] Espinosa and Clemente met between ten and fifteen years ago. [N.T., July 31, 1990, at 97.] It was not until 1987 and 1988 that events caused the relationships to sour.[2]

---

**1.** Local 919 and Local 1776 are member organizations within the International Union of United Food and Commercial Workers (the "UFCW"). Prior to 1979, the UFCW was known as the Retail Clerks International Union. The change of name followed a merger of the Retail Clerks Union and the Meat Cutters Union.

**2.** The present action is not the sole conflict between Plaintiff and Defendant. In 1987 Clemente's law firm, Nicholas A. Clemente, P.C., came under investigation by the United States Department of Labor, Office of Labor Racketeering, regarding legal services provided the 919 Legal Funds. No charges were ever filed by the Government. [N.T., July 31, 1990, at 143–

## B. *The Alleged Defamations*

Clemente alleges four acts of defamation by Espinosa occurring between January and May of 1988. According to plaintiff, these statements were published to Young, and charged that plaintiff was connected with the Mafia, was wired and was an informant for the Government, as follows:

### (1) *The Florida Defamation*

From January 27, 1988 to February 2, 1988 various officials from different UFCW locals convened in Florida for a UFCW International Advisory Committee Meeting. Both Espinosa and Young were in attendance. According to the testimony of Young, it was at this meeting that Espinosa stated that Clemente was an "informant for the Government" and that Clemente was "wired". [N.T., July 31, 1990, at 17, 18.]

### (2) *The Palm Springs Defamation*

A second meeting of UFCW locals took place in Palm Springs, California between April 12 and April 19, 1988. Young testified he was told by Espinosa at this meeting that Clemente was "connected with the Mafia, that he's got connections with the Mafia." [N.T., July 31, 1990, at 26.]

### (3) *The Philadelphia Defamation*

On May 7, 1988, Espinosa, Young and Clemente met in Atlantic City, New Jersey to discuss a planned "Buy America" campaign designed to promote particular union concerns. As part of the campaign, the parties intended to hold a "Buy America" concert featuring certain well-known entertainers. Clemente, who purportedly has contacts in the entertainment field, introduced Young and Espinosa to two men— Eliot Weisman ("Weisman") and Jilly Rizzo ("Rizzo"). Clemente suggested that Weisman and Rizzo could help attract celebrity participation.

Following the Atlantic City meeting, Espinosa telephoned Young on several occasions in Philadelphia. Young testified that during these discussions, Espinosa told Young that Espinosa "felt more than ever that [Clemente] had connections or was connected with people of unsavory character," and that Espinosa "absolutely felt that [Clemente] was the cause of his problems." [3] [N.T., July 31, 1990, at 32.]

### (4) *The Myrtle Beach Defamation*

The final alleged act of defamation occurred between May 20 and May 25, 1988 at another UFCW meeting in Myrtle Beach, South Carolina. At that time, Young testified that Espinosa showed him highlighted portions of a book about the Mafia entitled *Vengeance Is Mine: Jimmy "the Weasel" Fratianno Tells How He Brought the Kiss of Death to the Mafia*. Both Young and Espinosa testified that Espinosa highlighted certain passages pertaining to both Weisman and Rizzo. [N.T., July 31, 1990, at 34; August 1, 1990, at 67.] One of the marked pages in particular shows a 1978 profile photograph of Eliot Weisman, taken while under arrest. The caption under the photograph describes Weisman as "the mob's front man," and as part of the "Premier Crew"—"ten men charged with financing the Premier Theaters through mob banking and stock frauds and later diverting theater profits to enrich themselves." M. Zuckerman, *Vengeance Is Mine* (1987).

---

44.] An independent audit by the 919 Legal Funds, however, allegedly revealed billing irregularities by Clemente. As a result, the Trustees of the 919 Legal Funds terminated Clemente's contract in June of 1988. [Defendant's Exhibit 3.]

On August 23, 1988, the Trustees of the 919 Legal Funds filed their First Amended Complaint against Clemente in the United States District Court for the District of Connecticut. [C.A. No. H–88–512] The Complaint alleges that Clemente committed, *inter alia,* certain violations of ERISA, by overcharging the 919 Legal Funds for services provided by his firm. [Defendant's Exhibit 3.] After two years this case has not yet gone to trial and there is no expectancy of a prompt resolution of the issues.

**3.** During the period in question the Department of Labor conducted an investigation of Local 919. Although the parties disagree about the precise nature of that investigation, they stipulated that, "On November 21, 1989, Mr. Espinosa reimbursed Local 919's Food Pension Fund in the amount of $1572.78 as a result of a disallowance of some expenses submitted by Mr. Espinosa to that Fund, the disallowance having occurred during the course of a Department of Labor investigation of that Fund." [Stipulation of Parties at Hearing, August 15, 1990, at 13.]

Espinosa told Young that these passages were "basically proof that ... there's Mafia connections in some of the dealings that [Clemente's] involved with and that he's wired and [that Young had] better stay away from him." [N.T., July 31, 1990, at 34.]

■ Defendant steadfastly maintains that he did not publish any of the alleged defamatory statements regarding the plaintiff. [N.T., August 1, 1990, at 52, 57, 63–64.] He admits to showing Young the book *Vengeance Is Mine,* but states that he did so without any oral reference to the plaintiff. Espinosa testified that he "just told [Young to] look at the people who were at the meeting [in Atlantic City]." [N.T., August 1, 1990, at 69.]

Defendant did not attempt to prove the truth of the statements attributed to him. *See* 42 Pa.C.S.A. § 8343(b)(1); *Walder v. Lobel,* 339 Pa.Super. 203, 488 A.2d 622, 625–26 (1985) (Where defamation action is brought by private person, presumption of falsity exists, although defendant may prove truth as an absolute defense.) Nor did he claim the existence of a privilege which might exempt him from liability. *See, e.g., Agriss v. Roadway Exp., Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 463 (1984) ("Liability for publication of defamatory matter may be defeated by a privilege to publish the defamation.").

It is clear to the Court that there is no easy way to reconcile the conflicting testimony of Young and Espinosa. Young told the Court that Espinosa published statements concerning Clemente. Espinosa swore that he did not. The only third-party testimony relating to whether the statements were made was that of Mr. Herman Wooden ("Wooden"), secretary/treasurer of Local 1776. Called by plaintiff as a rebuttal witness, Wooden testified that he attended the Palm Springs meeting in April of 1988 and that he was present when Espinosa stated that Young would be "surprised to find out [that] Mr. Clemente is an informant for the Government...." [N.T., August 1, 1990, at 128.]

Based upon an assessment of the credibility of the witnesses presented, the Court finds that Espinosa did tell Young that Clemente was an "informant for the Government" and was "wired". The Court also finds that Espinosa told Young that Clemente was "connected with" or had "connections with the Mafia." Lastly, the Court finds that Espinosa showed Young highlighted portions of the book *Vengeance Is Mine,* that he did so with the intention of communicating to Young that Clemente was associated with known Mafia figures, and that he told Young that the book "proved it." [4]

## II. CONCLUSIONS OF LAW AND DISCUSSION

### A. *Plaintiff's Claim of Defamation*

■ Having determined that defendant made the statements alleged by plaintiff, the next question in an action for defamation is whether such statements are capable of defamatory meaning. *Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072, 1078 (3rd Cir.1985), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). Under Pennsylvania law, a statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cosgrove Studio and Camera Shop, Inc. v. Pane,* 408 Pa. 314, 318, 182 A.2d 751, 753 (1962). In reaching a determination, a court must consider not only the language of the statements, but also the context in which they were published. *Pierce v. Capital Cities Communications, Inc.,* 576 F.2d 495, 502 (3rd Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978). "[W]hether a communication is capable of defamatory meaning depends upon what a recipient 'correctly, or mistakenly but reason-

**4.** Espinosa's defense that he did not say anything when he handed Young the book is insufficient as a matter of law. An oral statement is not required to prove defamation. Actions alone may be legally defamatory where it is shown that such actions, by innuendo, created a negative impression of the character of the Plaintiff in the eyes of a third person. *Krochalis v. Insurance Co. of North America,* 629 F.Supp. 1360, 1368–69 (E.D.Pa.1985).

ably, understands' that the statement was intended to express." *Id.* (*quoting* Restatement (Second) of Torts § 563 (1977)).

The Court has no difficulty in concluding that statements accusing another of being "connected with the Mafia," and of having "connections with the Mafia," are capable of defamatory meaning. The Second Circuit, in a case applying Pennsylvania law, specifically held that charging an individual with having "alleged mob ties" was enough to sustain a claim of defamation. *Bufalino v. Associated Press*, 692 F.2d 266, 269 (2d Cir.1982), *cert. denied*, 462 U.S. 1111, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983); *See, also, Privitera v. Phelps*, 79 A.D.2d 1, 435 N.Y.S.2d 402 (App.Div.1981) (Complaint charging that defendant slandered plaintiff by accusing him of being a "member of the Mafia" was legally sufficient to sustain a cause of action for defamation where plaintiff pled special damages.).

The Court also finds that although the terms "wired" and "informant" standing alone may not be defamatory, they are capable of defamatory meaning given the context in which Espinosa spoke. The Court bases its conclusion upon Young's testimony that he understood the words "wired" and "informant" to indicate that Clemente was in trouble with the Federal Government and had agreed to "serve up" union officials in exchange for leniency or dismissal of the claims against him. [N.T., July 31, 1990, at 19.]

Lastly, the Court concludes that Espinosa potentially defamed Clemente when he showed Young highlighted passages of the book *Vengeance Is Mine*, to "prove" Clemente's Mafia affiliations.

B. *Slander Per Se*

 Defendant argues that even if the alleged statements are capable of defamatory meaning, plaintiff's action nevertheless must fail. It is defendant's position that the words in question do not constitute slander per se and that, absent proof of special damages, unilaterally stipulated out of the case by plaintiff, plaintiff cannot maintain a cause of action for defamation. [Defendant's Exhibit 8.]

A cause of action for most defamations exists only where plaintiff successfully establishes (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) *special harm resulting to the plaintiff from its publication*, and (7) abuse of a conditionally privileged occasion. 42 Pa.C. S.A. § 8343(a) (emphasis added).

Pennsylvania, however, recognizes an exception to this general rule for slander actions. A plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se. Only four categories of words may constitute slander per se. They are: words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. Restatement (Second) of Torts § 570 (1977). Plaintiff claims that the alleged defamatory remarks constitute slander per se in that they impute to him both a criminal offense and business misconduct.

(1) *Business Misconduct*

 Plaintiff argues that he was disparaged in the pursuit of his profession by defendant's alleged statements that defendant was "connected with the Mafia," had "connections with the Mafia," was "wired" and was an "informant for the Government." The Court agrees with plaintiff, and finds that the statements made were slanderous per se.

In determining whether a statement is per se slanderous as an accusation of business misconduct Pennsylvania follows the position set forth by the Restatement of Torts, as follows:

One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, [ ... ] is

subject to liability without proof of special harm.

Restatement (Second) of Torts § 573 (1977).

Contrary to defendant's assertions, a statement may be per se defamatory although it does not explicitly charge the subject with a failure of business or professional performance. In *Agriss v. Roadway Exp., Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984), an employer's accusation against an employee of "opening company mail" was held capable of being understood as a charge of both unfitness for business and of possible criminal activity. *Agriss*, 483 A.2d at 471.

Similarly, defendant's reliance on the case of *Korry v. Intern. Tel. & Tel. Corp.*, 444 F.Supp. 193 (S.D.N.Y.1978) is misplaced. In *Korry*, a Former United States Ambassador to Chile brought suit against the ITT Corporation and its president. The complaint alleged that the defendants defamed Korry in his professions as a diplomat and journalist by accusing him of having communist affiliations. The court disagreed, finding that calling Korry a "communist" was not slanderous per se. *Korry*, 444 F.Supp. at 196.

In reaching its conclusion, however, the court expressly stated that Korry could not be slandered in his profession as a diplomat because the alleged statements were made long after he ceased pursuing a career in international relations. *See* Restatement (Second) of Torts § 573 Comment c (1977). The court further found that accusing Korry of communism could not be deemed per se slanderous with regard to his career as a journalist in light of "today's more relaxed atmosphere." Earlier cases holding to the contrary, the court found, were "decided at a time when the word 'communist' was much more laden with emotion that it is today." *Korry*, 444 F.Supp. at 196.

Although calling someone a "communist" may no longer bring him into disrepute, the same cannot be said of accusing a person of being connected with the Mafia. Labor unions in the United States are perceived as vulnerable to infiltration by organized crime and are constantly under scrutiny regarding possible illegal activities. As adduced by the evidence at trial, labor leaders are highly sensitive to the public's perception that they are "part of the mob." Accusing a person involved in the labor movement of being "attached to the mob" is thus "one of the worst things" that can be said about him. [N.T., July 31, 1990, at 18.] Persons such as Clemente who are not themselves labor leaders, but who provide legal services to local unions, also are apt to suffer professionally if suspected of having Mafia ties. [N.T., July 31, 1990, at 102.]

Whether statements are susceptible of defamatory meaning depends upon both the specific words, the context in which they are spoken, and the person to whom they refer. Statements relating to attorneys impute business misconduct and are slanderous per se where they tend to "show a lack of character or a total disregard of professional ethics.... or [where they] accuse an attorney of unprofessional conduct." *Wachs v. Winter*, 569 F.Supp. 1438, 1443 (E.D.N.Y.1983). Defendant correctly argues that to defame a person in his business or profession a statement must be "peculiarly harmful to one engaged in [that] business or profession. Disparagement of a general character, equally discreditable to all persons, is not enough...." Restatement (Second) of Torts, Comment e (1977). Defendant fails to mention, however, that the Restatement would allow a finding of defamation per se if "the particular quality disparaged ... is peculiarly valuable in the plaintiff's business or profession." *Id.*

Attorneys are officers of the Court, charged with upholding the laws of the States and of the United States. They also are bound by Rules of Professional Conduct requiring them to be of good moral character. The career of an attorney is closely linked with his reputation for honesty and integrity. At minimum, accusing an attorney of having Mafia ties imputes both a disregard for the law he is charged to uphold, and a character inconsistent with that required of a member of the legal profession. *See Pennsylvania Rules of*

*Professional Conduct*, Rule 8.4(c) and Comment (1987).

In the instant case, it is clear to the Court that the statements made by defendant to Young while Young was serving as president of Local 1776 were particularly apt to affect Young's view of plaintiff in his capacity as a lawyer. Although plaintiff did not directly represent Young's Local, he did hold the contract for the 1776 Legal Fund. The statements made were intended to and did in fact cause Young to question the propriety of the professional relationship between the 1776 Legal Fund and the plaintiff. [N.T., July 31, 1990, at 33–35.] The Court thus finds that the statements published were slanderous per se.

### (2) *Criminal Activity*

 The second basis of plaintiff's slander per se claim is that defendant's alleged statements imputed criminal activity on the part of plaintiff. Although asserted less forcefully than the "business misconduct" claim, the essence of plaintiff's argument is straightforward. Plaintiff reasons that the Mafia often is deemed synonymous with organized crime in America and that accusing plaintiff of having Mafia affiliations is equivalent to charging him with criminal activity. Plaintiff further reasons that the use of the terms "informant" and "wired" implied that plaintiff was assisting the Government as part of some plea bargain arrangement arising out of criminal charges pending against him. Here too, the Court finds that the statements made did impute criminality and were slanderous per se.

A statement constitutes slander per se as an accusation of criminality when it charges either directly or indirectly the commission of a specific offense punishable by imprisonment. *Burns v. Supermarkets General Corp.*, 615 F.Supp. 154, 157 (E.D. Pa.1985); Restatement (Second) of Torts § 571 (1977). A charge of criminal intent or design, or mere ability to commit a crime

is not sufficient to state a cause of action. *Id.*, at Comment c. At least one court has held that a charge of affiliation with criminal elements alone is not slander per se. *Privitera v. Town of Phelps*, 79 A.D.2d 1, 435 N.Y.S.2d 402 (N.Y.App.Div. 4th Dept. 1981).

Defendant cites the New York case, *Privitera v. Town of Phelps*, in support of its position that the alleged statements are not per se slanderous because they do not expressly accuse plaintiff of a specific crime. *Privitera* involved a claim brought by a property owner accused of having "mob" affiliations by a member of a town zoning board. In finding that the alleged statements did not accuse the plaintiff of a crime per se, the court reasoned:

> People are indicted for what they do, not for their associations or beliefs and membership in an organization, even membership in an organization having a criminal purpose, is not an indictable offense.[5]

*Privitera v. Town of Phelps*, 79 A.D.2d 1, 435 N.Y.S.2d 402 (N.Y.App.Div.1981).

The claims in *Privitera*, however, were somewhat different from those presented by the case at bar. As the *Privitera* court itself notes, words are slanderous per se under the crime category if "a crime is readily apparent from properly pleaded innuendo." *Privitera*, 79 A.D.2d at 5, 435 N.Y.S.2d 402. In *Privitera*, no innuendo was pled. Here, plaintiff specifically asserts that the words "wire" and "informant" indirectly suggested to Young that plaintiff was accused by the Government of a specific offense.

Defendant has cited no authority requiring that the defamatory words name the offense charged in order to be slander per se. On the contrary, the authors of the Restatement explain that an accusation of criminality exists although the defamer does not "charge any particular criminal offense either by name or description, if the words use imply some crime...." Re-

---

5. The use of the phrase "indictable offense" is somewhat misleading. The Restatement (Second) of Torts § 571 Comment d (1977), explains that under the modern view of slander per se, "the crime charged need not be of a type that is subject to indictment." This is because changes in criminal procedure now allow institution of criminal prosecution by means other than indictment.

statement (Second) of Torts § 571 Comment c (1977). A finding of slander per se is not precluded by the fact that the defendant's statements might be capable of a more innocent interpretation. *Cf. Miller v. Lear Siegler, Inc.*, 525 F.Supp. 46, 59 (D.Kansas 1981).

This Court must analyze the statements in their proper context, with consideration of their impact upon the intended recipient. The record indicates that Espinosa knew or should have known that Young would understand his remarks to suggest that as one affiliated with the Mafia, Clemente had committed a criminal act or acts. As such, they went beyond mere allegations that Clemente was associated with criminal elements or that he was a bad or immoral person. Espinosa's statements, insofar as they imputed criminality, were slanderous per se.

## C. *Special and General Damages*

The term "special damages" or "special harm" is defined by the courts of Pennsylvania to include such "actual and concrete damages capable of being estimated in money...." *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1086 (E.D.Pa.1980), (*citing, Altoona Clay Products v. Dun & Bradstreet, Inc.*, 246 F.Supp. 419, 422 (W.D.Pa. 1965), *rev'd on other grounds*, 367 F.2d 625 (3rd Cir.1966)). Evidence of special damages is required where the defamation does not amount to slander per se. Having found that plaintiff has satisfied his burden of proving slander per se, his claim will not be barred by a failure to plead or prove special damages.

Nor does plaintiff's unilateral Stipulation not to offer proof of special damages pre-

clude this Court from considering evidence of generalized harm. The record reflects a dispute between the parties as to the meaning of the term "special damages" as used in plaintiff's Stipulation. [Hearing, August 15, 1990, at 27, 28, 41.] In resolving this dispute, the Court must assume, absent evidence to the contrary, that words embodied in written agreements are intended to bear their ordinary and usual meaning. Restatement (Second) of Contracts § 202(3) (1979). The term "special damages" as used in the Stipulation is understood according to its normal usage in the courts of Pennsylvania. It will not be read to preclude the Court from considering evidence of general harm.

Generalized damage to reputation and business is presumed as a natural consequence of slander per se. *Meehan v. Snow*, 494 F.Supp. 690, 695 (S.D.N.Y.1980), *rev'd and remanded on other grounds*, 652 F.2d 274 (2d Cir.1981). General damages may include harm to reputation and standing in the community, personal humiliation and mental pain and suffering.[6] *Sauerhoff v. Hearst Corp. (Baltimore News Am. Div.)*, 538 F.2d 588 (4th Cir.1976) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974)). Such harm may be temporary in nature. *Pino v. Prudential Ins. Co. of America*, 689 F.Supp. 1358, 1366 (E.D.Pa.1988).

Plaintiff testified that he suffered anxiety as a result of defendant's allegations. He stated that he could not sleep and that he suffered from feelings of being shunned by both business and personal contacts. He stated that he eventually sought psychiatric help.[7] Plaintiff's wife testified that

---

6. The Court's dismissal of Plaintiff's claim for intentional infliction of emotional distress does not preclude it from rendering an award of damages for emotional injury sustained. The Court's dismissal of the separate tort action was based upon its conclusion that Defendant's acts were not sufficiently "extreme and outrageous" to satisfy the elements of a claim for intentional infliction of emotional distress. [Order, January 29, 1990.] An award of compensatory damages for emotional distress in a defamation action is not conditioned upon a finding of outrageous conduct by the defendant. Restatement (Second) of Torts § 623 (1977).

7. Over Defendant's objection, Plaintiff sought the admission of a letter by a Dr. Paul Poinsard, now deceased, but formerly of the Department of Psychiatry and Human Behavior of Jefferson Medical College. The letter, prepared after the filing of the complaint in the instant matter, and addressed to Plaintiff's counsel, relates those feelings of emotional distress which Plaintiff purportedly described to Dr. Poinsard. The letter offers no medical diagnosis and does not indicate any program or treatment administered by Dr. Poinsard. The Court finds that the letter does not qualify under any of the potentially

plaintiff was troubled particularly when his children began asking whether he was in the Mafia. [N.T., July 31, 1990, at 160.]

Defendant did not offer any evidence to dispute plaintiff's assertions. Rather, he argued that plaintiff was barred by the Stipulation from offering any evidence of actual harm. Defendant also claimed that plaintiff suffered no loss of business and that any reputational or emotional injury was de minimis.

## III. AWARD AND CONCLUSIONS

The Court finds that defendant made the alleged statements, and that they were capable of defamatory meaning. It further finds that such statements constituted slander per se, in that they imputed both business misconduct and criminal activity. Plaintiff, thus, is entitled to an award of damages.

### A. Compensatory Damages

 Under the common law of defamation, a plaintiff who proves that statements made about him were slander per se may recover even substantial sums without evidence of actual loss. The existence of an injury is presumed from the fact of publication. *Agriss v. Roadway Exp., Inc.,* 483 A.2d at 470 (Pa.Super.1984); Restatement (Second) Torts § 570 (1977). This does not mean that a Court should exercise unbridled discretion in compensating a plaintiff for such harms as personal humiliation, impairment of reputation, and mental anguish. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974). It is the view of most courts that, as a matter of fairness, the fact-finder should not be allowed to presume too much. *Sharon v. Time, Inc.,* 599 F.Supp. 538, 586 (S.D.N.Y.1984). In some cases a nominal recovery may be sufficient to "vindicate the injury." *Lasky v. American Broadcasting Companies, Inc.,* 631 F.Supp. 962, 974 (S.D.N.Y.1986) (*quoting, Airlie Foundation, Inc. v. Evening Star Newspaper Co.,* 337 F.Supp. 421, 431 (D.D.

C.1972)). Nominal damages are appropriate where there has exists an " 'invasion of a right, but no real, substantial or serious loss or injury has been established.' " *Weider v. Hoffman,* 238 F.Supp. 437, 447 (M.D.Pa.1965) (*quoting Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 197 A.2d 721 (1964)).

In the instant ·case, the Court may consider the degree of plaintiff's nonmonetary injury in fixing a damages award. It deems relevant plaintiff's subjective reports of embarrassment and humiliation, and of suffering from bouts of anxiety manifested by insomnia. The Court credits plaintiff's testimony that he had a sense, following Espinosa's allegations, of being shunned by prior business and personal associates. It also takes note of the testimony of plaintiff's wife that plaintiff's children doubted the integrity of their father after learning of the statements made about him, and that plaintiff suffered as a result of their fears.

By contrast, the Court finds significant defendant's assertion that plaintiff could not and did not prove any loss of business. In fact, the record reflects that plaintiff continues to practice law, that he maintains his relationship with Young and that he continues to represent the 1776 Legal Fund.

Based upon this Court's assessment of the facts of the present case, it deems appropriate an award of compensatory damages in the amount of $10,000.

### B. Punitive Damages

 Plaintiff also asserts a right to punitive damages. Punitive damages are not a matter of right, but may be granted in the sound discretion of the court. *Meehan v. Snow,* 494 F.Supp. 690, 696 (S.D.N.Y.1980), *rev'd and remanded on other grounds,* 652 F.2d 274 (2d Cir.1981). In slander per se cases, punitive damages are available without evidence of special harm. See *Daley v. John Wanamaker,* 317 Pa.Super. 348, 464 A.2d 355 (1983). Their pur-

---

applicable exceptions to or exclusions from the hearsay rule. See Fed.R.Evid. 803(4) and (6). Nor is it admissible as expert testimony under

Fed.R.Evid. 702. As such, the Court deems the letter inadmissible and does not consider it in any way in rendering its award.

pose is not to compensate the plaintiff, but rather to impress upon the defendant the gravity of the wrong committed. *See Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378 (1982) (Upholding award of punitive damages where there was no award of compensatory damages.)

The courts of Pennsylvania have long held that to recover punitive damages a plaintiff must demonstrate that the defendant acted with "legal malice." *Purcell v. Westinghouse,* 411 Pa. 167, 191 A.2d 662, 668 (1963). Following the Supreme Court holdings in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), applying the "malice" standard has not been easy. Although a plurality of the Supreme Court held that the First Amendment requires application of the *Gertz* standard only in cases involving media defamations of public figures, *Dun & Bradstreet Inc. v. Greenmoss Builders,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (plurality opinion), many courts find the *Gertz* rational persuasive in non-media, private defamation cases as well. *Cf. Geyer v. Steinbronn,* 351 Pa.Super. 536, 506 A.2d 901 (1986); *Fleming v. Moore,* 221 Va. 884, 275 S.E.2d 632 (1981), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985).

There is little consistency in the holdings of the Pennsylvania courts. *Cf. Agriss v. Roadway Express Inc.,* 483 A.2d at 474 n. 9; *Laniecki v. Polish Army Veterans Association,* 331 Pa.Super 413, 423, 480 A.2d 1101, 1106 (1984). Those courts adhering to the common law rule hold that "malice" may be proved by showing the kind of "outrageous conduct" which displays an evil motive or ill-will toward the plaintiff. *Id.* Under the *Sullivan* and *Gertz* "actual malice" standard, as applied recently in the case of *Geyer v. Steinbronn,* 351 Pa.Super. 536, 506 A.2d 901 (1986), a court must focus on whether the defamations were published with knowledge of their falsity or with reckless disregard for the truth. *Id.* In essence, the common law standard

focuses on the defendant's attitude toward the plaintiff, whereas the *Sullivan* and *Gertz* standard considers the defendant's attitude toward the truth. *Geyer,* 506 A.2d at 915.[8]

This Court does not deem it necessary to resolve the dispute as to which test should apply. Under either test, it considers there to be insufficient evidence to warrant an award of punitive damages.

Looking first at whether Espinosa acted recklessly or with knowledge of the falsity of his statements, the Court cannot conclude that punitive damages are warranted. Both Young and Espinosa testified that union leaders are particularly fearful of being linked to the Mafia. Moreover, Young admitted that he too doubted Clemente after viewing the depictions of Weisman and Rizzo in the book *Vengeance Is Mine.* Although Espinosa might have acted negligently in failing to fully investigate Clemente's reputation before making the charges against him, the Court cannot say that such negligence amounted to the kind of reckless behavior which would justify an award of punitive damages.

As for possible evidence of spite or ill-will, the Court notes that defendant repeated his charges on numerous occasions over a period of at least 5 months. It also recognizes that during the time these statements were published, defendant's Local 919 was under investigation, and defendant may have wished to turn attention from himself toward Clemente. The record reveals that on at least one occasion, Espinosa suggested to Young that he believed Clemente to be the source of his problems. [N.T., July 31, 1990, at 32.] Evidence of attempts by Espinosa to save himself, however, is insufficient to establish a conscious intent to hurt Clemente. The Court finds that plaintiff has not met its burden of proving that defendant's statements were motivated by spite or ill-will.

Based upon the evidence presented, the Court finds that the circumstances of this

---

**8.** The Restatement of Torts view of punitive damages generally allows consideration of both defendant's evil motives and the recklessness of his conduct. Restatement (Second) of Torts § 908 and Comment b (1977).

case do not warrant an award of punitive damages.

An appropriate Order will follow.

## ORDER

AND NOW, to wit this 26th day of September, 1990, following a non-jury trial, the Court finds in favor of the plaintiff Nicholas A. Clemente, and against the defendant Arnaldo F. Espinosa, in the amount of $10,000.

IT IS FURTHER ORDERED that judgment is entered on the non-jury finding in favor of plaintiff Nicholas A. Clemente, and against the defendant Arnaldo F. Espinosa, in the amount of $10,000.