# United States Court of Appeals
## For the First Circuit

No. 99-1162
No. 99-1355

DEBRA McCANN, Personally, and as Mother and
Next Friend of Jillian McCann and Jonathan McCann,

Plaintiffs, Appellees/Cross-Appellants,

v.

WAL-MART STORES, INC.,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

John W. McCarthy with whom Rudman & Winchell, LLC was on
consolidated brief for defendant.
Samuel W. Lanham, Jr. with whom Cuddy & Lanham was on
consolidated brief for plaintiffs.

BOUDIN, Circuit Judge. This case involves a claim for false imprisonment. On December 11, 1996, Debra McCann and two of her children--Jillian, then 16, and Jonathan, then 12--were shopping at the Wal-Mart store in Bangor, Maine. After they returned a Christmas tree and exchanged a CD player, Jonathan went to the toy section and Jillian and Debra McCann went to shop in other areas of the store. After approximately an hour and a half, the McCanns went to a register and paid for their purchases. One of their receipts was time stamped at 10:10 p.m.

As the McCanns were leaving the store, two Wal-Mart employees, Jean Taylor and Karla Hughes, stepped out in front of the McCanns' shopping cart, blocking their path to the exit. Taylor may have actually put her hand on the cart. The employees told Debra McCann that the children were not allowed in the store because they had been caught stealing on a prior occasion. In fact, the employees were mistaken; the son of a different family had been caught shoplifting in the store about two weeks before, and Taylor and Hughes confused the two families.

Despite Debra McCann's protestations, Taylor said that they had the records, that the police were being called, and that the McCanns "had to go with her." Debra McCann testified that she did not resist Taylor's direction because she believed that she had to go with Taylor and that the police were coming. Taylor and Hughes then brought the McCanns past the registers in the store to an area near the store exit. Taylor stood near the McCanns while Hughes purportedly went to call the police. During this time, Debra McCann tried to show Taylor her identification, but Taylor refused to look at it.

After a few minutes, Hughes returned and switched places with Taylor. Debra McCann told Hughes that she had proof of her identity and that there must be some proof about the identity of the children who had been caught stealing. Hughes then went up to Jonathan, pointed her finger at him, and said that he had been caught stealing two weeks earlier. Jonathan began to cry and denied the accusation. At some point around this time Jonathan said that he needed to use the bathroom and Hughes told him he could not go. At no time during this initial hour or so did the Wal-Mart employees tell the McCanns that they could leave.

Although Wal-Mart's employees had said they were calling the police, they actually called a store security

officer who would be able to identify the earlier shoplifter. Eventually, the security officer, Rhonda Bickmore, arrived at the store and informed Hughes that the McCanns were not the family whose son had been caught shoplifting. Hughes then acknowledged her mistake to the McCanns, and the McCanns left the store at approximately 11:15 p.m. In due course, the McCanns brought suit against Wal-Mart for false imprisonment (a defamation claim was also made but was rejected by the jury).

The jury awarded the McCanns $20,000 in compensatory damages on their claim that they were falsely imprisoned in the Wal-Mart store by Wal-Mart employees. Wal-Mart has now appealed the district court's denial of its post-judgment motions for judgment as a matter of law and for a new trial pursuant to Fed. R. Civ. P. 50(b) and 59, respectively, arguing that the McCanns did not prove false imprisonment under Maine law and that the court's jury instructions on false imprisonment were in error. The McCanns have cross-appealed from the district court's pre-trial dismissal of their claim for punitive damages.

Both of Wal-Mart's claims of error depend on the proper elements of the tort of false imprisonment. Although nuances vary from state to state, the gist of the common law tort is conduct by the actor which is intended to, and does in fact, "confine" another "within boundaries fixed by the actor" where,

-4-

in addition, the victim is either "conscious of the confinement or is harmed by it." Restatement (Second), Torts § 35 (1965). The few Maine cases on point contain no comprehensive definition, see Knowlton v. Ross, 95 A. 281 (Me. 1915); Whittaker v. Sanford, 85 A. 399 (Me. 1912), and the district court's instructions (to which we will return) seem to have been drawn from the Restatement.

While "confinement" can be imposed by physical barriers or physical force, much less will do--although how much less becomes cloudy at the margins. It is generally settled that mere threats of physical force can suffice, Restatement, supra, § 40; and it is also settled--although there is no Maine case on point--that the threats may be implicit as well as explicit, see id. cmt. a; 32 Am. Jur. 2d False Imprisonment § 18 (1995) (collecting cases), and that confinement can also be based on a false assertion of legal authority to confine. Restatement, supra, § 41. Indeed, the Restatement provides that confinement may occur by other unspecified means of "duress." Id. § 40A.

Against this background, we examine Wal-Mart's claim that the evidence was insufficient, taking the facts in the light most favorable to the McCanns, drawing reasonable inferences in their favor, and assuming that the jury resolved credibility issues consistent with the verdict. See Gibson v.

-5-

City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 716 (1st Cir. 1994). Using this standard, we think that a reasonable jury could conclude that Wal-Mart's employees intended to "confine" the McCanns "within boundaries fixed by" Wal-Mart, that the employees' acts did result in such a confinement, and that the McCanns were conscious of the confinement.

The evidence, taken favorably to the McCanns, showed that Wal-Mart employees stopped the McCanns as they were seeking to exit the store, said that the children were not allowed in the store, told the McCanns that they had to come with the Wal-Mart employees and that Wal-Mart was calling the police, and then stood guard over the McCanns while waiting for a security guard to arrive. The direction to the McCanns, the reference to the police, and the continued presence of the Wal-Mart employees (who at one point told Jonathan McCann that he could not leave to go to the bathroom) were enough to induce reasonable people to believe either that they would be restrained physically if they sought to leave, or that the store was claiming lawful authority to confine them until the police arrived, or both.

Wal-Mart asserts that under Maine law, the jury had to find "actual, physical restraint," a phrase it takes from Knowlton, 95 A. at 283; see also Whittaker, 85 A. at 402. While

-6-

there is no complete definition of false imprisonment by Maine's highest court, this is a good example of taking language out of context. In Knowlton, the wife of a man who owed a hotel for past bills entered the hotel office and was allegedly told that she would go to jail if she did not pay the bill; after discussion, she gave the hotel a diamond ring as security for the bill. She later won a verdict for false imprisonment against the hotel, which the Maine Supreme Judicial Court then overturned on the ground that the evidence was insufficient.

While a police officer was in the room and Mrs. Knowlton said she thought that the door was locked, the SJC found that the plaintiff had not been confined by the defendants. The court noted that the defendants did not ask Mrs. Knowlton into the room (another guest had sent for her), did not touch her, and did not tell her she could not leave. The court also said that any threat of jail to Mrs. Knowlton was only "evidence of an intention to imprison at some future time." Knowlton, 95 A. at 283.[1] In context, the reference to the necessity of "actual, physical restraint" is best understood as

---

[1]Although the distinction may seem a fine one, it is well settled that a threat to confine at a future time, even if done to extract payment, is not itself false imprisonment. See Restatement, supra, § 41 cmt. e.

a reminder that a plaintiff must be actually confined--which Mrs. Knowlton was not.

Taking too literally the phrase "actual, physical restraint" would put Maine law broadly at odds with not only the Restatement but with a practically uniform body of common law in other states that accepts the mere threat of physical force, or a claim of lawful authority to restrain, as enough to satisfy the confinement requirement for false imprisonment (assuming always that the victim submits). It is true that in a diversity case, we are bound by Maine law, as Wal-Mart reminds us; but we are not required to treat a descriptive phrase as a general rule or attribute to elderly Maine cases an entirely improbable breadth.

More interesting is Wal-Mart's claim that the instructions were inadequate. The district court largely borrowed the Restatement formulation by telling the jury that it must find the following:

> One, that the defendant acted intending to confine the plaintiffs within boundaries fixed by the defendant; two, that the acts of the defendant directly or indirectly resulted in such a confinement of the plaintiffs; and third, the plaintiffs were conscious of the confinement or were harmed by it.

The court added that the jury could find for the McCanns if it found that "the plaintiffs reasonably believed they were not

-8-

permitted to leave the store," and that the plaintiffs did not have to prove that "such restraint was accomplished through actual physical force against their bodies."

In assailing the instructions, Wal-Mart repeats its claim, which we have already rejected, that the district court should have charged that "actual, physical restraint" is required to make out confinement. A somewhat different claim by Wal-Mart, citing Whittaker, 85 A. at 402, is that the district court's instruction was defective because it did not tell the jury that the restraint must be a physical and not merely a moral influence, and that influencing or convincing another to stay is not actual physical restraint. In substance, Wal-Mart wanted a description of what was not confinement.

We think it is at least arguable that, if a proper instruction were tendered, it might be appropriate or even obligatory (the latter is a nice point that we do not decide) to make clear to the jury that there are outer boundaries to the confinement concept and that a personal plea by the defendant to remain or the defendant's invocation of "moral obligation" alone would not be sufficient to inflict a "confinement." There might be special justification for such a clarification in a case in which the evidence was open to that interpretation.

However, in this case, Wal-Mart did not offer a proper instruction: in arguing for a different instruction, it said to the district court that the restraint "must be physical and not merely a moral influence," implicating Wal-Mart's incorrect view that actual physical restraint was required; and its further statement that "[i]nfluencing or convincing another to remain in place is not actual physical restraint" has the same fault and is also open to the criticism that "[i]nfluencing or convincing" is itself a misleading phrase, at least as presented by Wal-Mart, because one could influence or convince by threats of force or assertions of lawful authority, which do or can constitute false imprisonment. In short, Wal-Mart did not offer a proper instruction.

It is well-settled that a district court is not required to rewrite an improper instruction to capture a kernel that may have some validity; it is counsel's job to present an unimpeachable instruction. See Parker v. City of Nashua, 76 F.3d 9, 12 (1st Cir. 1996). Wal-Mart was not faced with an all-or-nothing choice: it could have pressed for its actual physical restraint instruction and also tendered an alternative instruction framed so as to make clear that, for example, mere moral suasion is not sufficient. Since it did not do the latter, we are freed from the chore of deciding in the abstract

-10-

whether and when such a limiting instruction would be appropriate.

Finally, the McCanns cross-appeal from the district court's pre-trial dismissal of their claim for punitive damages. The precedents say that punitive damages can only be awarded for tortious conduct where the defendant acts with malice. <u>Tuttle v. Raymond</u>, 494 A.2d 1353, 1361 (Me. 1985). Under Maine law, malice can be express, as when the defendant is motivated by ill will toward the plaintiff, or implied, where the defendant's actions are "outrageous" and not merely reckless or negligent. <u>Id.</u>

In this case, the McCanns contend that Hughes's refusal to permit Jonathan to use the bathroom was sufficiently outrageous to support a claim for punitive damages. The McCann's testimony was simply that Jonathan said once that he needed to use the bathroom and Hughes told him he could not. At that point, the issue was dropped and neither Jonathan nor his mother said another word to the Wal-Mart employees about it. While we think it was foolish for Hughes to tell the 12-year-old that he could not go to the bathroom, the denial was not "outrageous" given the failure to press the request. We can imagine circumstances where a refusal to allow such a bathroom visit would be outrageous.

The McCanns insist that the refusal must be considered in conjunction with other facts, including an asserted violation by Wal-Mart of its own policy of asking prior shoplifters to leave the store rather than detaining them, Hughes's action of pointing her finger at Jonathan while accusing him of stealing, and her failure to clear up the McCanns' identity at an earlier stage. Whether taken separately or together, these actions may be culpable but are short enough of "outrageous" to permit actual but not punitive damages. To the extent extra harm was done to Jonathan, the jury had no difficulty drawing this distinction; it awarded him $10,000 while awarding his mother and sister only $5,000 each.

Affirmed.