**Douglas PENNOYER, Jr.**

v.

**MARRIOTT HOTEL SERVICES, INC., et al.**

**No. Civ.A. 03–5060.**

United States District Court, E.D. Pennsylvania.

June 24, 2004.

Peter C. Gardner, Law Offices of Peter C. Garnder, Merion, PA, for Plaintiff.

Stephanie K. Rawitt, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendants Marriott Hotel Services, Inc., t/a and d/b/a Philadelphia Marriott Hotel; Marriott International, Inc.; Philadelphia Market Street Hotel Corp.; Philadelphia Market Street HMC Hotel Limited Partnership; Philadelphia Market Street Marriott Hotel LP; New Market Street, LP; HMC Market Street, LLC; Philadelphia Market Street Hotel II, LP; Market Street Host, LLC; and Market Street Marriott, LLC ("Defendants"). Plaintiff Douglas Pennoyer ("Plaintiff") brings defamation and false imprisonment claims under common law. In their motion for summary judgment on the claims, Defendants contend that Plain-tiff's claims for defamation and false imprisonment fail as a matter of law. For the following reasons, Defendants' motion for summary judgment shall be denied in full.

### Factual Background

In July of 2002, the American Guild of Organists ("AGO"), a national professional organization that serves the organ and choral music fields, held its bi-annual convention at the Philadelphia Marriott Hotel. On July 1, 2002, the day before the convention was to begin, exhibitors were permitted to set up their booths in the Marriott's Franklin Hall, located on the fourth floor of the hotel.

At approximately 9:00 P.M. that evening, Derrick McKinney, a Marriott Loss Prevention Officer ("LPO"), approached Plaintiff. McKinney had observed him earlier on a security camera, as Plaintiff was walking around the Franklin Hall exhibit area. Plaintiff was carrying a box filled with convention exhibit items, including books and compact discs. Since most convention attendees were attending opening night festivities off the hotel premises, the LPO became suspicious of Plaintiff's presence in the hall. He questioned Plaintiff, and learned that Plaintiff was neither a registrant at the convention, nor a guest at the hotel. Plaintiff explained that he had shown up at the hotel and unsuccessfully tried to register for the convention that day, and that he had just purchased some items. The LPO requested for Plaintiff to show him a receipt, but Plaintiff could not produce one. According to Plaintiff, McKinney, in a loud voice, accused Plaintiff of stealing the items. At the time, two exhibitors were setting up their exhibits further away in the same hall.

After both McKinney and his supervisor questioned the Plaintiff, Marriott's Loss Prevention Department believed that

Plaintiff had engaged in criminal activity, and contacted the Philadelphia police. The LPOs remained with the Plaintiff in Franklin Hall. When the police arrived, the LPOs stated that they believed that Plaintiff had stolen the items in his possession. After the police arrived and questioned the Plaintiff, they came to the same conclusion that Plaintiff had engaged in criminal activity. Plaintiff was arrested and charged with trespassing and theft. He was handcuffed and led out of the hotel, where various convention attendees saw him.

Sometime after his arrest, Plaintiff produced a receipt for some of the items found in his possession on July 1, 2002. In September 2002, the charges of trespassing and theft against Plaintiff were dropped.

Plaintiff brings defamation and false imprisonment claims against Defendants. He alleges that Defendants' conduct in front of hotel witnesses was intended to and did blacken Plaintiff's reputation, and that Defendants' communication to others that Plaintiff had committed crimes constituted slander per se. The false imprisonment claim alleges that Defendants confined Plaintiff against his will in the hall of the hotel, within boundaries fixed by the Defendants. Plaintiff seeks damages in excess of $50,000 per claim, together with interest, attorney fees and other compensation as the court deems just and appropriate.

### Legal Standard for Summary Judgment

Summary judgment is intended to prevent needless and costly trials where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogato-

ries, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In evaluating a motion for summary judgment, the evidence should be viewed and all reasonable inferences drawn in favor of the non-moving party. *Nieves v. Dragovich*, 1997 WL 698490, *1, 1997 U.S. Dist. LEXIS 23410, at *2 (E.D.Pa.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

Movants have the initial burden of showing the court a lack of genuine issues of material fact, and can do so simply by pointing out that there is a lack of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Movants need not support a motion with affidavits or other materials negating the non-moving party's claim. *Id.* To rebut the motion, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). The plaintiff must "present affirmative evidence" aside from the pleadings themselves to defeat a proper motion for summary judgment. *Nieves*, 1997 WL 698490, *2, 1997 U.S. Dist. LEXIS 23410, at *3 (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505).

### Discussion

#### A. Defamation

Plaintiff alleges that Marriott's communications to others, including con-

duct prior to police arrival and communications to police, constitute slander per se. We find that, with the exception of Marriott's statements to the Philadelphia police alleging Plaintiff's criminal activity, Plaintiff has a viable defamation claim. However, Marriott's allegedly defamatory statements to police are absolutely privileged, and Plaintiff may not claim defamation for those communications.

█ In a Pennsylvania state law action for defamation, Plaintiff must establish (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position. *Clemente v. Espinosa*, 749 F.Supp. 672, 677 (E.D.Pa.1990) (citing 42 Pa. Cons.Stat. § 8343(a) (1988)). A statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 676 (quoting *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751, 753 (1962)). Under Pennsylvania law, it is for the court to determine whether the statement at issue is capable of defamatory meaning. *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F.Supp.2d 570 (E.D.Pa.1999), *aff'd*, 229 F.3d 1139 (2000).

█ Defendants contend that Plaintiff fails to prove that McKinney's accusations harmed his reputation in the organ and choral music community. However, we find that there are general issues of material fact that preclude summary judgment. As stated above, one of the requirements of a defamation claim is to show "special

harm" resulting to the plaintiff from its publication. *Espinosa*, 749 F.Supp. at 677. The term "special harm" is defined as "actual damages which are economic or pecuniary losses." *Sprague v. Am. Bar Ass'n*, 276 F.Supp.2d 365, 368–69 (E.D.Pa. 2003) (quoting Restatement (Second) of Torts, § 575, cmt. b (1977)). However, Pennsylvania recognizes an exception to the "special harm" requirement for slander actions. A plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se. *Espinosa*, 749 F.Supp. at 677. There are four categories of words that constitute slander per se: words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. *Id.* (citing Restatement (Second) of Torts § 570 (1977)).

Without using the slander per se standard, Plaintiff would not have a sufficient defamation claim because he cannot establish any "special" harm. He has not identified any economic or pecuniary losses suffered as a direct result of the Marriott's communications to others. Plaintiff alleges that since the July 2002 incident, the Allen Organ Company declined to pursue a working relationship with him, and did not provide a reason for declining to pursue a relationship. Although Plaintiff suspects that Allen Organ Company declined to work with him because of his damaged reputation, he has not provided any direct proof of this.

█ However, under Pennsylvania law, a defendant who publishes a statement which can be considered slander per se is liable for the proven, *actual* harm that the publication causes. *Walker v. Grand Cent. Sanitation*, 430 Pa.Super. 236, 634 A.2d 237, 244 (1993). To show actual damages in a defamation claim, the plaintiff must show competent proof. *Sprague*, 276 F.Supp.2d at 368. Actual

damages are divided into two types: general and special. *Id.* "General" damages typically flow from defamation, such as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* The Restatement (Second) of Torts requires a victim of slander per se to make some showing of general damage, although he need not prove "special damage." *Walker*, 634 A.2d at 241. Proof of general damages is required, since it accommodates the Court's interest in maintaining some type of control over the amount that a jury should be entitled to compensate an injured person. *Id.* at 251. In determining if a plaintiff has demonstrated any loss to reputation, it must be measured by the perception of others, rather than that of the plaintiff himself because "reputation is the estimation in which one's character is held by his neighbors or associates." *Sprague*, 276 F.Supp.2d at 370.

Previous cases have made assessments of the evidence of such actual harm. For example, in *Marcone v. Penthouse International Magazine*, the plaintiff testified that he was "frustrated, distraught, upset, and distressed," and that he feared "retribution against his family." *Marcone v. Penthouse International Magazine*, 754 F.2d 1072, 1080 (3rd Cir.1985). Likewise, in *Sprague*, the plaintiff asserted that the defamatory statements cause him "anger, humiliation, embarrassment, and fear." *Sprague*, 276 F.Supp.2d at 371. He also alleged that his fear was "constant and continuous." *Id.* at 372. In these cases, the court found that there was sufficient evidence of actual harm for a jury to decide the issue.

We find that under the slander per se standard, Plaintiff has a sufficient defamation claim. A reasonable jury could find that Plaintiff has suffered from some continuous fear, embarrassment, or humilia-

tion that was as severe as that of the plaintiffs from the preceding cases.

 However, Marriott's statements to the police that accuse Plaintiff of theft and trespass cannot be the basis for a defamation claim, since such communications are protected by absolute privilege. Accusations made by Defendant to police regarding Plaintiff committing crimes cannot form the basis for liability for defamation, because statements made by private parties solely to law enforcement officials in which an accusation of crime is made for the purpose of inducing prosecution of criminal charges are absolutely privileged as statements preliminary to judicial proceeding. *Pawlowski v. Smorto*, 403 Pa.Super. 71, 588 A.2d 36, 41 (1991).

In the case at bar, Defendants had absolutely privileged immunity to allege that Plaintiff had engaged in criminal activity, since these statements were made in preparation and issuance of charges. The LPOs made statements that accused Plaintiff of committing a crime to the Philadelphia police, but they have absolute privilege to do so because according such privilege to statements made in or preliminary to judicial proceedings "aims at ensuring free and uninhibited access to the judicial system." *Id.* at 42.

With the exception of those statements made to the police, summary judgment is therefore denied for all defendants on the defamation claim.

### B. False Imprisonment

 Plaintiff alleges that Marriott's confinement of Plaintiff, while waiting for police arrival, constituted false imprisonment. We find that Plaintiff establishes a viable false imprisonment claim that may be brought to trial.

 To establish liability for false imprisonment, the plaintiff has the burden

to prove that (1) Defendant acted with the intent to confine Plaintiff within boundaries fixed by him; (2) Defendant's act directly or indirectly resulted in such confinement; and (3) Plaintiff was conscious of this confinement or was harmed by it. *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 111 n. 2 (1971) (citing Restatement (Second) of Torts, § 35 (1965)). Confinement may be effected by physical barriers or physical force, by submission to a threat to apply physical force, or by taking a person into custody under an asserted legal authority. *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 541 (E.D.Pa.1982) (citing Restatement (Second) of Torts §§ 38–41 (1965)). According to Pennsylvania law, the confinement within the boundaries fixed by the defendant must be complete. If there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment. *Id.* at 540. Unless physical force or barriers are used, there must be some sort of verbal threat to effect the confinement. *Id.* Additionally, Plaintiff must make some request to leave, which request is denied by the defendant. *Id.*

Defendants contend that Plaintiff was not completely confined because there was a known, safe means of escape, that the Marriott did not use any physical force or threats of force, that they made no effort to prevent Plaintiff from leaving the room, and that Plaintiff never requested to leave the room.

In the case at bar, when we view the evidence in the light most favorable to Plaintiff, we think that a reasonable jury could conclude that Marriott's employees intended to "confine" Plaintiff "within boundaries fixed by" Marriott, that the employees' acts did result in such a confinement, and that Plaintiff was conscious of the confinement. Both Plaintiff and the LPOs clearly testified that Marriott security kept Plaintiff from leaving before the Philadelphia police arrived. Plaintiff stated the following in his deposition:

[The LPOs] were very aggressive and insistent. They did not allow me to move. Don't move, they said, and don't touch any of your belongings; just stay right there.

They remained a distance of some feet from me, but there was no way that I was going to do other than what they commanded, because I didn't know what was forthcoming ...

I was prevented verbally to the extent that I had a fear that if I moved from the spot at which they told me not to move from, that I would be harmed physically ...

[M]y fear was that they would hurt me if I moved. They told me not to move and they were on their walkie-talkies, talking to other people and calling for the police.

Deposition of Douglas Pennoyer, at 81, 132–33.

We find that Plaintiff's testimony raises a genuine issue of material fact for the fact-finder to decide if the Marriott security personnel's words and actions confined Plaintiff within the boundaries of the hall. A jury could conclude that Plaintiff reasonably believed that he would be physically restrained if he tried to leave the premises, even if there was a known, safe means of escape. Additionally, the Plaintiff could reasonably believe that the hotel was claiming lawful authority to confine him until the Philadelphia police arrived.[1]

---

1. See *Thorsen v. Kauffmann's Dep't Stores*, 55 Pa. D. & C.4th 565 (2000), where the Court denied Defendant's objection to Plaintiff's complaint of false imprisonment. In that case, Plaintiff was shopping at a department store and was in a dressing room to try on

Since an issue of material fact exists regarding the alleged confinement, Plaintiff has established a viable claim for false imprisonment. Summary judgment is therefore denied for all defendants on the false imprisonment claim.

An order follows.

## ORDER

AND NOW, this day of June, 2004, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED, for the reasons stated in the accompanying Memorandum, as follows:

1) Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's First Cause of Action (Defamation); and

2) Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Second Cause of Action (False Imprisonment).

pairs of jeans. While wearing a pair that she had tried on, she left the dressing room to get a different size. When she returned to the dressing room, she found it occupied, and a store sales clerk had her pants. Plaintiff alleged that a sales associate told her that she was "in trouble," that her pants were being "held hostage" by the Kaufmann's sales associate, and that she was prevented from leaving the area. Although the defendant contended that since there was no physical restraint, there could be no false imprisonment, the plaintiff's allegations raised a question of fact for the fact-finder to decide if the store employee's words and actions confined the Plaintiff within the boundaries of the fitting rooms. *Id.*, at 568–69.

The facts in the current case are also similar to those of a First Circuit case. In *McCann v. Wal–Mart Stores, Inc.*, 210 F.3d 51 (1st Cir.2000), the Court held, *inter alia*, that Plaintiffs stated a viable false imprisonment claim because a reasonable jury could conclude that confinement took place, even though no explicit threat existed. Employees' direction to Plaintiffs, their reference to the police, and their continued presence were enough to induce reasonable people to believe either that they would be restrained physically if they sought to leave, or that the store was claiming lawful authority to confine them until the police arrived, or both. The Court noted that threats of physical harm may be "implicit as well as explicit." *Id.*, at 53.