**Jaqueline ROSSI, Tim Baurer, and Fiu Fiu, L.L.C., Plaintiffs,**

v.

**Mark SCHLARBAUM and Janet Schlarbaum, Defendants.**

**Civil Action No. 07–3792.**

United States District Court, E.D. Pennsylvania.

Jan. 29, 2009.

Order and Memorandum on Reconsideration Feb. 20, 2009.

---

Richard F. Klineburger, III, Klineburger & Nussey, Philadelphia, PA, for Plaintiff.

George Bochetto, David J. Perlman, Scott P. Sigman, Bochetto & Lentz, PC, Philadelphia, PA, for Defendants.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

This case arises out of actions taken by defendant Janet Schlarbaum after she learned of a relationship between her husband, defendant Mark Schlarbaum, and plaintiff Jacqueline Rossi. Plaintiffs allege that telephone calls made by Janet Schlarbaum caused them to suffer personal and economic losses and that her statements during these telephone calls were defamatory and amounted to tortious interference with contractual relations. They also assert that defendant Mark Schlarbaum was negligent in safeguarding confidential information.

Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons set forth below, defendants' motion is granted in part and denied in part. The Court denies defendants' motion with respect to plaintiffs' tortious interference with contractual relations claim and certain allegedly defamatory statements. The Court grants defendants' motion in all other respects.

## II. BACKGROUND

Plaintiffs Jacqueline Rossi and Tim Baurer are the married co-owners of plaintiff Fiu Fiu, L.L.C. ("Fiu Fiu"), an online swimwear and activewear company. (Defs.' Mot. 1; Pls.' Resp. 1). To promote their business, plaintiffs[1] entered into a relationship with Jennifer Nicole Lee, a former Miss Bikini America and a fitness celebrity. (Defs.' Mot. 13–14; Pls.' Resp. 1.) Plaintiffs arranged a photo shoot of Ms. Lee modeling Fiu Fiu swimwear and activewear; Ms. Lee signed over the rights to the photographs, which plaintiffs used on the Fiu Fiu website. (Defs.' Mot. 14; Pls.' Resp. 1; Image/Model Release Between Amaginations Photography & Fiu Fiu Swimwear, July 28, 2005, Ex. FF to Defs.' Mot.) Subsequently, Ms. Lee became more involved in plaintiffs' business, investing money, promoting Fiu Fiu, and working with plaintiffs to develop a JNL-branded swimwear line. (Defs.' Mot. 20; Pls.' Resp. 1–2; Email from Lee to plaintiffs (Feb. 11, 2007), Ex. Z to Defs.' Mot.)

Ms. Rossi also worked as a stripper. (Defs.' Mot. 3; Pls.' Resp. 2.) In 2006, she met Mark Schlarbaum at Cheerleaders, a Philadelphia-based strip club. (Defs.' Mot. 4; Pls.' Resp. 2.) Mr. Schlarbaum visited Ms. Rossi at Cheerleaders, where she performed on stage and provided him with lap

---

**1.** This Memorandum and Order will use the term "plaintiffs" to refer to plaintiffs Jacqueline Rossi and Tim Baurer collectively. The term "plaintiffs" does not include the institutional plaintiff, Fiu Fiu, L.L.C.

dances for an additional fee. (Defs.' Mot. 4; Pls.' Resp. 2.) In late 2006, Ms. Rossi and Mr. Schlarbaum began meeting privately in hotel rooms. (Defs.' Mot. 5; Pls.' Mot. 2.) By December 2006, plaintiffs had moved to California, and Ms. Rossi had begun working at a California-based strip club, Captain Creams. (Defs.' Mot. 5; Pls.' Mot. 2.) Mr. Schlarbaum met privately with Ms. Rossi in a hotel in California in December 2006; this was their last such meeting. (Defs.' Mot. 5; Pls.' Mot. 2.) The extent of the sexual activity that occurred during the hotel room engagements is in dispute, but the parties agree that Ms. Rossi, topless, gave Mr. Schlarbaum lap dances while he was dressed only in his boxer shorts. (Mark Schlarbaum Dep. 53:10–18, July 14, 2008, Ex. N to Defs.' Mot.; Rossi Dep. 10:13–13:1, June 25, 2008, Ex. B to Defs.' Mot.)

During this period of time, Ms. Rossi and Mr. Schlarbaum also exchanged emails. On November 13, 2006, Mr. Schlarbaum emailed Ms. Rossi to arrange the hotel meeting in California and said that he had "a few ideas for [her] business that [he] wanted to talk to [her] about as well . . . ." (Email from Mark Schlarbaum to Rossi (Nov. 11, 2006), Ex. 2 to Pls.' Resp.) On December 27, 2006, Ms. Rossi emailed a personal note and a generic investment solicitation to Mr. Schlarbaum. (Defs.' Mot. 9; Pls.' Resp. 3; Email from Rossi to Mark Schlarbaum (Dec. 27, 2006), Ex. 3 to Pls.' Resp.) They discussed a possible investment by telephone, and Ms. Rossi sent an email with the subject heading "Expense Totals, Goals and Investment Plans (confidential)" to Mr. Schlarbaum the following day. (Defs.' Mot. 9–10; Pls.' Resp. 3–4; Email from Rossi to Mark Schlarbaum (Dec. 28, 2006), Ex. 4 to Pls.' Resp.) The email contained information about Fiu Fiu, including the business's name, expenses, and product sales, and a proposed investment plan. (Defs.' Mot. 9–10; Pls.' Resp. 4; Email from Rossi to Mark Schlarbaum (Dec. 28, 2006), Ex. 4 to Pls.' Resp.) The email also mentioned "jennifer"—Jennifer Nicole Lee—stating that she had invested in Fiu Fiu and that JNL-branded swimwear would be in stock shortly. (Email from Rossi to Mark Schlarbaum (Dec. 28, 2006), Ex. 4 to Pls.' Resp.)

Shortly after this email exchange, Janet Schlarbaum learned about the relationship between her husband and Ms. Rossi. (Defs.' Mot. 11–12; Pls.' Resp. 4.) Following this disclosure, Mrs. Schlarbaum contacted a number of individuals to speak about Ms. Rossi. (Defs.' Mot. 15–19; Pls.' Resp. 4–6.) In early 2007, Mrs. Schlarbaum called Cheerleaders and Captain Creams, two strip clubs where Ms. Rossi had worked. (Defs.' Mot. 18–19; Pls.' Resp. 4.) At Cheerleaders, Mrs. Schlarbaum spoke with an employee named Alycia. (Defs.' Mot. 19; Rossi Dep. 186:1–187:3.) At Captain Creams, Mrs. Schlarbaum spoke with an employee named Regina Villareal (Gina). (Defs.' Mot. 18–19; Villareal Aff., Aug. 1, 2008, Ex. 5 to Pls.' Resp.) The content of these conversations is in dispute. Ms. Rossi and Ms. Villareal testified that Mrs. Schlarbaum said that Ms. Rossi was a prostitute with a criminal record. (Rossi Dep. 49:15–24; Villareal Aff. ¶¶ 5–8.) Denying these allegations, Mrs. Schlarbaum testified that she only asked about the clubs' policies about dancers entertaining clients outside of the club and did not mention Ms. Rossi. (Janet Schlarbaum Dep. 136:18–139:19, July 15, 2008, Ex. M. to Defs.' Mot.)

Additionally, Mrs. Schlarbaum left two voicemail messages for Ms. Lee and her agent, Topher DesPres. (Defs.' Mot. 15–16; Pls.' Resp. 4.) In these messages, which were transcribed, Mrs. Schlarbaum claimed to be a reporter writing an article about Ms. Lee. (Voicemail Transcripts, Exs. 6 & 8 to Pls.' Resp.) She stated that

while doing research for her article, she had learned that Ms. Lee was conducting business with Ms. Rossi, who was a stripper and not "pioneering for women." (Voicemail Transcript, Ex. 8 to Pls.' Resp.) Mrs. Schlarbaum also spoke directly with Ms. Lee and told her about the hotel room meetings between Ms. Rossi and Mr. Schlarbaum. (Defs.' Mot. 16–17; Pls.' Resp. 5; Lee Dep. 14:20–15:2, 30:16–31:15, May 8, 2008, Ex. R to Defs.' Mot.) According to Ms. Lee, Mrs. Schlarbaum also said that Ms. Rossi was telling people in strip clubs that Ms. Lee had invested $100,000 in Fiu Fiu and that Ms. Rossi was selling JNL-branded apparel to her stripper colleagues. (Lee Dep. 15:2–16:25.)

While the parties agree that the relationship between plaintiffs and Ms. Lee changed after Mrs. Schlarbaum's telephone calls, the parties dispute the extent of the change and the claimed adverse impact on Fiu Fiu. (Defs.' Mot. 19–26; Pls.' Resp. 6.) Mr. DesPres, Ms. Lee's agent, was concerned about Ms. Lee's image and requested that Mr. Baurer remove all the photographs of and references to Ms. Lee from the Fiu Fiu website. (Defs.' Mot. 22–23; Email from DesPres to Baurer (Apr. 1, 2007), Ex. EE to Defs.' Mot.) Defendants contend, however, that while Mr. Baurer removed some of the images, some photographs of Ms. Lee remained on Fiu Fiu's website. (Defs.' Mot. 22–23, 23 n. 14.) While their business arrangements changed, Ms. Lee and plaintiffs remained in contact and continued to discuss how they could work together at least through May 2007. (*See* Defs.' Mot. 23–26; Emails between Lee and plaintiffs, Exs. JJ–QQ to Defs.' Mot.)

### III. PROCEDURAL HISTORY

On September 12, 2007, plaintiffs filed a Complaint naming as defendants Mark Schlarbaum; Janet Schlarbaum; Schlarbaum Capital Management, L.P.; and S & S Investment Partners, L.P. (Doc. No. 1, filed Sept. 12, 2007.) Plaintiffs asserted that this Court has diversity jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1332 as plaintiffs are citizens of Nevada, defendants are citizens or businesses of the Commonwealth of Pennsylvania, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00). (Compl. ¶ 1.)

The Complaint alleged the following causes of action:

Count I Negligence (Plaintiffs v. Mark Schlarbaum, Schlarbaum Capital Management L.P., and S & S Investment Partners, L.P.)

Count II Negligent Infliction of Emotional Distress (Plaintiffs v. Mark Schlarbaum)

Count III Negligence (Plaintiffs v. Janet Schlarbaum)

Count IV Negligent Infliction of Emotional Distress (Plaintiffs v. Janet Schlarbaum)

Count V Tortious Interference with Contractual Relationship (Plaintiffs v. Janet Schlarbaum)

Count VI Tortious Interference with Economic Advantage (Plaintiffs v. Janet Schlarbaum)

Count VII Invasion of Privacy (Jaqueline Rossi v. Janet Schlarbaum)

Count VIII Intentional Infliction of Emotional Distress (Plaintiffs v. Janet Schlarbaum)

Count IX Intentional Infliction of Emotional Distress (Plaintiffs v. Mark Schlarbaum)

Count X Defamation (Jaqueline Rossi v. Janet Schlarbaum)

Count XI Slander (Jaqueline Rossi v. Janet Schlarbaum)

Count XII Libel (Jaqueline Rossi v. Janet Schlarbaum).

On October 24, 2007, defendants filed a Motion to Dismiss Counts I through V, VII through IX, and XI through XII in their entirety, and Count VI with respect to the claims of plaintiffs Tim Baurer and Jacqueline Rossi. (Doc. Nos. 6 & 7, filed Oct. 24, 2007.) Plaintiffs agreed to the dismissal, without prejudice, of Counts II, III, IV, VIII, and IX, but they opposed dismissal of the remaining counts. Following a telephone conference with the parties on January 31, 2008, the Court decided to dismiss Counts II, III, IV, VIII, and IX with prejudice, subject to plaintiffs' right to seek reconsideration if warranted by discovery. By Order and Memorandum dated February 20, 2008, the Court granted in part and denied in part defendants' motion. Order & Mem. of Feb. 20, 2008 (Doc. No. 25); *Rossi v. Schlarbaum*, No. 07–3792, 2008 WL 483217 (E.D.Pa. Feb. 20, 2008). With respect to Count I (Negligence), the Court granted defendants' motion with as to the institutional defendants, Schlarbaum Capital Management, L.P. and S & S Investment Partners, L.P. The Court also granted defendants' Motion to Dismiss Count I with respect to the claims of Tim Baurer and Fiu Fiu, L.L.C. The Court denied defendants' Motion to Dismiss Count I as to Jacqueline Rossi's claims against Mark Schlarbaum. The Court denied defendants' motion in all other respects. Following the Court's ruling, the following counts remained: Count I, as asserted by plaintiff Rossi against defendant Mark Schlarbaum; Counts V and VI (as plead); Count VII (as plead); and Counts X through XII (as plead).

On September 17, 2008, defendants filed the instant Motion for Summary Judgment. (Doc. No. 35, filed Sept. 17, 2008). In the motion, defendants seek entry of judgment in their favor on all remaining counts.

## IV. STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law . . . ." *Id.* In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## V. DISCUSSION

### A. Count I: Negligence (Plaintiffs v. Mark Schlarbaum)

The gravamen of plaintiffs' charge is that Mr. Schlarbaum failed to safeguard the confidentiality of information about Fiu Fiu that Ms. Rossi shared with him in an email marked "Confidential." The email that Ms. Rossi sent to Mr. Schlarbaum contained the background and goals for Fiu Fiu, Fiu Fiu's expenses (marked confidential), Fiu Fiu's monthly sales, and other financial information. (Email from Rossi to Mark Schlarbaum (Dec. 28, 2006), Ex. 4 to Pls.' Resp.) The email also mentioned,

without giving much detail, the relationship between Jennifer Nicole Lee and Fiu Fiu and implied that Ms. Lee had invested in Fiu Fiu. (*Id.*)

Plaintiffs contend that Mr. Schlarbaum had a confidential relationship with Ms. Rossi such that he had a duty to protect all such information from access by third parties. (Compl. ¶¶ 16–19; 57–60.) They allege that the content of Mrs. Schlarbaum's various telephone conversations reveal that Mr. Schlarbaum breached this duty and allowed Mrs. Schlarbaum to access plaintiffs' confidential information—either by reading Ms. Rossi's emails to Mr. Schlarbaum or by Mr. Schlarbaum telling Mrs. Schlarbaum about the content of Ms. Rossi's emails. (*Id.* ¶¶ 27–30, 59.)

 In a negligence cause of action, whether a duty exists between the parties is a question of law for the court. *See Herczeg v. Hampton Twp. Mun. Auth.*, 766 A.2d 866, 871 (Pa.Super.Ct.2001) ("Whether a duty exists under a particular set of facts is a question of law." (citation omitted)); *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 554 Pa. 209, 720 A.2d 1032, 1044 (1998) ("[T]he existence of a duty is a question of law . . . .").

The Supreme Court of Pennsylvania has long recognized that a variety of relationships can give rise to a duty of confidentiality:

> Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible.

*Leedom v. Palmer*, 274 Pa. 22, 117 A. 410, 411 (1922); *see also Drob v. Jaffe*, 351 Pa.

297, 41 A.2d 407, 408 (1945) ("[A] confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest."). More recently, the court has held that "[t]he general test for determining the existence of [a confidential] relationship is whether it is clear that the parties did not deal on equal terms." *Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412, 416 (1981) (citations omitted). Other Pennsylvania courts have emphasized the "disparity in position" between the two parties and "the complete trust" that the inferior party places in the superior party. *See, e.g., eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23–24 (Pa.Super.Ct.2002) (failing to find a confidential relationship between an advertising agency and its client); *Basile v. H & R Block, Inc.*, 777 A.2d 95, 102 (Pa.Super.Ct.2001) ("[T]he Pennsylvania Supreme Court has focused, consistently, on the disparity in position between the parties to determine whether the relationship is, in fact, confidential." (citations omitted)). "A business association may be the basis of a confidential relationship 'only if one party surrenders substantial control over some portion of his affairs to the other.'" *Commonwealth v. E–Z Parks, Inc.*, 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (1993) (citing *In re Estate of Scott*, 455 Pa. 429, 316 A.2d 883, 886 (1974)).

In assessing whether a confidential relationship exists, the Pennsylvania courts conduct a fact-intensive analysis of the relative positions of the parties. In *Basile*, the court reviewed the record, which demonstrated that H & R Block "actively sought customer trust in H & R Block as a corporate entity and in all of the services Block offered." 777 A.2d at 103. The court also found that the evidence suggested that "many of Block's customers en-

tered their relationship with Block in a position of pronounced economic and intellectual weakness." *Id.* at 104. Based on the evidence, the court concluded that "[plaintiffs] and Block did not deal on equal terms" and that this scenario "presented Block with the opportunity to abuse the Plaintiffs' trust for its own gain." *Id.* at 106.

In *Frowen,* the decedent was an eighty-six year old women with impaired hearing and sight. 425 A.2d at 417. Appellee had formed a close social relationship with her through which he gained her confidence. *Id.* at 418. In the transaction at issue in that case, appellee asked decedent to sell him her farm and drafted the sale agreement; he "was her sole advisor or counsellor at a time when she justifiably placed her confidence in him and believed that he would act in good faith for her interest." *Id.* The disparity in position between the parties to the sale agreement, along with the justifiable repose of trust, merited the conclusion that a confidential relationship existed between the parties. *Id.* As in *Frowen,* a finding that the parties have a longstanding relationship—business or social—in which one party relies solely on the advice of the other party will often support the ruling that a confidential relationship existed. *See, e.g., Young v. Kaye,* 443 Pa. 335, 279 A.2d 759, 763 (1971) (finding a confidential relationship when one party "had no independent advice on [the relevant] matters, relying instead upon the trusted advice of [the other party]"); *Brooks v. Conston,* 356 Pa. 69, 51 A.2d 684, 687 (1947) (same when one party "trusted [the other party] implicitly and relied solely upon his advice").

In the absence of substantial disparity between the parties or sole reliance by one party on the other, the Pennsylvania courts have held that a confidential relationship did not exist. In *In re Estate of Scott,* 455 Pa. 429, 316 A.2d 883, 886 (1974), the court held that a confidential relationship did not arise between a brother and a sister, despite the sister's physical disabilities. While the brother sold his sister's automobile and some of her stock, he did so at her request, and she "personally signed the [automobile] certificate of title . . . ." *Id.* Moreover, her "mental powers were undiminished . . . ." *Id.* As the facts revealed that she did not surrender substantial control over some portion of her affairs to her brother, an inference of confidentiality was unwarranted. *Id.*

The facts that support plaintiffs' argument that a confidential relationship existed are as follows: Mr. Schlarbaum and Ms. Rossi had a existing relationship of at least a number of months at the time that Ms. Rossi emailed him the investment solicitation. (Defs.' Mot. 4–9; Pls.' Resp. 2–4). Mr. Schlarbaum had used terms of affection with Ms. Rossi and sent her gifts such as electronic music. (Email from Mark Schlarbaum to Rossi (Nov. 12, 2006), Ex. 1 to Pls.' Resp.; Email from Mark Schlarbaum to Rossi (Nov. 13, 2006), Ex. 2 to Pls.' Resp.) Mr. Schlarbaum's emails to Ms. Rossi included statements such as "I am here to help if I can,"(Email from Mark Schlarbaum to Rossi (Nov. 12, 2006), Ex. 1 to Pls.' Resp.); "I have a few ideas for your business I wanted to talk to you about as well . . .," (Email from Mark Schlarbaum to Rossi (Nov. 13, 2006), Ex. 2 to Pls.' Resp.); "[Your business plan] sounds interesting. What details do you have?," (Email from Mark Schlarbaum to Rossi (Dec. 27, 2006, at 3:44 p.m.), Ex. 2 to Pls.' Resp.); and "[G]ive me a call at work [to talk about the business plan]. Market closed so I am all yours," (Email from Mark Schlarbaum to Rossi (Dec. 27, 2006, at 4:02 p.m.), Ex. 2 to Pls.' Resp.).

In comparison with the facts presented in the cases in which the Pennsylvania courts found that a confidential rela-

tionship existed, the facts in the instant case do not demonstrate a similar disparity in the parties' positions or sole reliance by one party on the other. Ms. Rossi did not "surrender[ ] substantial control over some portion of her affairs to [Mr. Schlarbaum]." *In re Estate of Scott,* 316 A.2d at 886. Rather, at all times, Ms. Rossi remained in control of Fiu Fiu's affairs. Moreover, while Mr. Schlarbaum may have encouraged Ms. Rossi to place trust in him, she did not rely solely on his advice. Although Mr. Schlarbaum may have had more business and investment experience than Ms. Rossi (*see* Biography of Mark Schlarbaum, Ex. 11 to Pls.' Resp.), this is insufficient to create the degree of disparity necessary to support the inference of a confidential relationship. In light of the above legal authority and the factual record in this case, the Court concludes as a matter of law that a confidential relationship did not exist between Mr. Schlarbaum and Ms. Rossi, and he did not owe her a duty of confidentiality. Accordingly, the Court grants defendants' motion with respect to Count I.

### B. Count V: Tortious Interference with Contractual Relationship (Plaintiffs v. Janet Schlarbaum)

In this Count, plaintiffs allege that Janet Schlarbaum "wrongfully and intentionally affected the contract between Plaintiffs and Jennifer Nicole Lee, a third party, for a celebrity clothing line to be offered by Fiu Fiu, L.L.C." (Compl. ¶ 72.) They contend that Mrs. Schlarbaum "wrongfully and intentionally used [confidential] information to sully the reputation of Plaintiff [Rossi] in the eyes of Jennifer Nicole Lee, her agent Topher DesPres and the public, ultimately causing Lee to withdraw from her contractual relationship with Plaintiff." (*Id.* ¶ 74.) In their Motion for Summary Judgment, defendants argue that plaintiffs cannot prove damages and that Mrs. Schlarbaum's statements to Ms. Lee and Mr. DesPres were justified or privileged because they were true. (Defs.' Mot. 38–42.)

For the tort of interference with contractual or prospective contractual relation, the Pennsylvania courts have adopted the law as stated in the Restatement (Second) of Torts §§ 766–774A (1979). *See, e.g., Crivelli v. Gen. Motors Corp.,* 215 F.3d 386, 394 (3d Cir.2000) ("Pennsylvania has expressly adopted the Restatement (Second) of Torts [with respect to intentional interference with contractual relation] ...." (citations omitted)). Under Pennsylvania law, as set forth in the Restatement, the elements of tortious interference with contractual or prospective contractual relations are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli,* 215 F.3d at 394 (citing *Strickland v. Univ. of Scranton,* 700 A.2d 979, 985 (Pa.Super.Ct.1997)); *see also* Restatement (Second) of Torts § 766.

A review of the record reveals that plaintiffs have produced evidence in support of each of these elements. With respect to the first element—the existence of a prospective contractual relation between plaintiffs and Ms. Lee—on November 2, 2006, Mr. Baurer emailed Ms. Lee proposing "to simply do a contract simply 'between us' that states we will work together and will evaluate how everything stands after 3 months and create a 'contract' then." (Email from Baurer to Lee (Nov. 2, 2006), Ex. W to Defs.' Mot.) Ms. Lee

responded affirmatively the same day, writing "Yes T! 3 months agreement to assess situation at that time! Sounds great!" (Email from Lee to Baurer (Nov. 2, 2006), Ex. W to Defs.' Mot.) An agreement to form a contract in three months' time qualifies as a prospective contract for purposes of the Restatement (Second) of Torts § 766B, Intentional Interference with Prospective Contractual Relation. *See* Restatement (Second) of Torts § 766B cmt. c (1979) ("Included are . . . any other relations leading to potentially profitable contracts. . . . Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.").

With respect to the second element—purposeful action by the defendant specifically intended to harm the relation—Mrs. Schlarbaum testified that she called Ms. Lee to find out whether Ms. Lee "was aware that [Ms. Rossi] had met [Mr. Schlarbaum] in a hotel room, and whether she was aware that [Ms. Rossi] was trying to get him to invest in the business." (Janet Schlarbaum Dep. 154:13–16, Ex. M to Defs.' Mot.) Mrs. Schlarbaum also testified that the purpose of her telephone calls to Ms. Lee was to determine whether Ms. Lee was involved in plaintiffs' alleged scheme to blackmail defendants. (*Id.* at 155:6–15.) Ms. Lee testified, however, that Mrs. Schlarbaum called because she was trying to help Ms. Lee, to make her aware that Ms. Rossi was telling others about Ms. Lee's investment in Fiu Fiu. (Lee Dep. 18:23–19:14, May 8, 2008, Ex. R to Defs.' Mot.) Regarding the purpose behind the telephone calls, Ms. Lee testified that she and Mrs. Schlarbaum "had a lengthy conversation, woman to woman and friend to friend, because I felt like she was honestly wanting to help me as a businesswoman and protect my image . . . ." (*Id.* at 30:25–31:3.) According to Ms. Lee, Mrs. Schlarbaum's telephone calls were designed to disrupt the relationship between Ms. Lee and plaintiffs. Thus, Mrs. Schlarbaum's intent is a disputed issue of material fact. If Ms. Lee's version of events is proven at trial, plaintiffs will have established the second element of tortious interference with contractual relation.

■ With respect to the third element, defendants argue that Mrs. Schlarbaum's actions were privileged as all of the information that she shared in her telephone calls with Ms. Lee was truthful. (Defs.' Mot. 39–42.) Under Pennsylvania law, if Mrs. Schlarbaum communicated only truthful information, she would not face liability. "The communication of truthful information does not constitute improper interference with another's contractual relationships." *Atiyeh Publ'g, L.L.C. v. Times Mirror Magazines, Inc.,* No. 00–1962, 2000 WL 1886574, at *3 (E.D.Pa. Dec. 7, 2000) (citing *Yaindl v. Ingersoll–Rand Co. Standard Pump–Aldrich Division,* 281 Pa.Super. 560, 422 A.2d 611, 623 n. 12 (1981)). Sharing truthful facts does not give rise to liability even if " 'the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another.' " *Id.* (citing Restatement (Second) of Torts § 772 cmt. b (1979)). Thus, while defendants' argument correctly states the law, the truthfulness of Mrs. Schlarbaum's statements to Ms. Lee remains in dispute. For example, Ms. Lee testified that Mrs. Schlarbaum shared the information that Ms. Rossi was telling individuals in strip clubs that Ms. Lee had invested $100,000 in Fiu Fiu. (Lee Dep. 15:2–22.) Mrs. Schlarbaum testified that she learned about Ms. Lee's investment directly from Ms. Rossi. (Janet Schlarbaum Dep. 142:6–8.) She did not testify, however, as to the basis of her knowledge that Ms.

Rossi was sharing this information with individuals in strip clubs. In an email to Ms. Lee, Ms. Rossi wrote that "I Did not and Do not tell anyone within the entertainment business about YOUR name nor mentioned that you invested 100K." (Email from Rossi to Lee (Mar. 30, 2007), Ex. DD to Defs.' Mot.) This contradictory evidence demonstrates that the truth of Mrs. Schlarbaum's statements to Ms. Lee—a material factual question—remains in dispute.

With respect to the fourth element, defendants argue that plaintiffs cannot prove damages as their relationship with Ms. Lee was not harmed as a result of Mrs. Schlarbaum's actions. (Defs.' Mot. 38.) They also provided an expert report stating that plaintiffs could not accurately prove damages due to plaintiffs' poor management of Fiu Fiu and the lack of adequate records. (Expert Report of Richard A. Ogorek 4, July 30, 2008, Ex. P to Defs.' Mot.) Yet Ms. Lee testified that, as a consequence of Mrs. Schlarbaum's telephone calls, she altered her relationship with plaintiffs. (Lee Dep. 19:22–20:16.) This evidence demonstrates that the question of damages is both material and disputed.

"The law ... accords little, if any, weight to the vindictive spirit, but it accords great weight to the individual's right to earn a living. Thus, a jury could find [Mrs. Schlarbaum's attempts to protect the reputation of Ms. Lee] unjustified when compared with its detrimental impact on [plaintiffs]." *Yaindl*, 422 A.2d at 623–24.

Accordingly, the Court denies defendants' motion with respect to Count V.

## C. Count VI: Tortious Interference with Economic Advantage (Plaintiffs v. Janet Schlarbaum)

Pennsylvania case law does not recognize a separate cause of action for tortious interference with economic advantage. Moreover, the states that recognize the cause of action define it in a way that is almost identical to the tort of interference with contractual relations, which is recognized in Pennsylvania. For example, under New Jersey law, to make out a claim for relief for tortious interference with economic advantage, "a plaintiff must show: (1) the existence of a reasonable expectation of economic advantage; (2) the defendant intentionally interfered with that interest; (3) the harm was inflicted without justification or excuse; and (4) the interference caused the loss of the interest." *Shontz v. Cumberland County*, 2008 WL 2329928, at *4 (N.J.Super. Ct. June 9, 2008) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 563 A.2d 31, 37 (1989)). These elements almost exactly parallel those of the Pennsylvania cause of action for tortious interference with contractual or potential contractual relation.[2] *See supra* Part V.B.

The Court finds that the overlap between the torts of interference with prospective contractual relation and interference with economic advantage makes pleading both duplicative. As discussed in Part V.B, *supra*, the Court denies Defen-

---

**2.** In *Printing Mart–Morristown*, the New Jersey Supreme Court compared tortious interference with economic advantage with the Restatement (Second) of Torts § 766B definition of intentional interference with prospective contractual relation. 563 A.2d at 37. The court found that the definitions were only "slightly different" and concluded that "for our purposes it is sufficient to record our conclusion that the Restatement test is sub-

stantially similar to the ... standard currently applied by New Jersey courts." *Id.* Moreover, Comment *c* to section 766B states that "[a]lso included [in the tort of intentional interference with prospective contractual relation] is interference with a continuing business or other customary relationship not amounting to a formal contract." Restatement (Second) of Torts § 766B cmt. c (1979).

dants' Motion for Summary Judgment with respect to Count V, Tortious Interference with Contractual Relation. Allowing plaintiffs to also proceed under Count VI, Tortious Interference with Economic Advantage, is unnecessary, and granting summary judgment in favor of defendants on Count VI will not prejudice plaintiffs. Accordingly, the Court grants defendants' motion with respect to Count VI.

### D. Count VII: Invasion of Privacy (Jacqueline Rossi v. Janet Schlarbaum)

Pennsylvania utilizes the Restatement (Second) of Torts in defining the tort of invasion of privacy. *See Harris v. Easton Publ'g Co.*, 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984) ("We believe that the Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania."). An action for invasion of privacy encompasses four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life, and (4) publicity placing a person in a false light. Restatement (Second) of Torts § 652A (1977); *see also Harris*, 483 A.2d at 1383. Plaintiffs do not specify which of these four torts they allege occurred, but the facts set forth in the Complaint most closely resemble publicity given to private life or publicity placing a person in a false light. (*See Compl.* ¶¶ 82–88.) The Court will thus analyze Count VII as pleading a cause of action for publicity given to private life or publicity placing a person in a false light.

Under the Restatement definition, a required element of the torts of publicity given to private life and publicity placing a

person in false light is *publicity*. Restatement (Second) of Torts §§ 652D, 652E (1977). Comment *a* to section 652E refers to Comment *a* to section 652D for a discussion of "what constitutes publicity." *Id.* at cmt. a. Comment *a* to section 652D defines publicity as making the matter "public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.... It is [a matter] of a communication that reaches, or is sure to reach, the public." *Id.* at § 652D cmt. a. The Pennsylvania courts have applied this definition of publicity in cases involving the tort of invasion of privacy. *See, e.g., Harris*, 483 A.2d at 1384; *Kryeski v. Schott Glass Tech., Inc.*, 426 Pa.Super. 105, 626 A.2d 595, 601 (1993).

■ The record does not contain any evidence that Mrs. Schlarbaum made her statements regarding Ms. Rossi "public, by communicating [them] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. As proof of publicity is a necessary element of publicity given to private life and publicity placing a person in false light, the lack of evidence tending to prove publicity is fatal to plaintiffs' claim. Thus, defendants' motion is granted as to Count VII.

### E. Counts X–XII: Defamation, Slander, and Libel (Jacqueline Rossi v. Janet Schlarbaum)

#### 1. Counts X (Defamation) and Count XI (Slander) [3]

Under Pennsylvania law, to prevail on a cause of action for defamation, a plaintiff

---

**3.** The Court notes that defamation has two forms: slander (oral defamation) and libel (written defamation). *See Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520, 522 (1987) (internal citations omitted). Oral defamation and slander share the same essential elements, and the Court concludes that pleading both is duplicative. As such, the Court will address Count X (Defamation) and Count XI (Slander) together.

must establish (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. § 8343(a).

 Pennsylvania recognizes an exception to the requirement of showing special harm where the words spoken constitute slander *per se*. *Clemente v. Espinosa,* 749 F.Supp. 672, 677 (E.D.Pa.1990) (DuBois, J.). Slander *per se,* as defined in the Restatement (Second) of Torts adopted in Pennsylvania, *Walker v. Grand Cent. Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d 237, 244 (1993), encompasses statements that impute to the person (1) a criminal offense, (2) a loathsome disease, (3) a matter incompatible with his business, trade, profession, or office, or (4) serious sexual misconduct. Restatement (Second) of Torts § 570 (1977); *see also Chicarella v. Passant,* 343 Pa.Super. 330, 494 A.2d 1109, 1115 n. 5 (1985). While a plaintiff in a slander *per se* action need not make a showing of special damages, he or she must demonstrate general damages caused by the statement. *Synygy, Inc. v. Scott–Levin, Inc.,* 51 F.Supp.2d 570, 581 (E.D.Pa.1999); *see also Pennoyer v. Marriott Hotel Servs., Inc.,* 324 F.Supp.2d 614, 619 (E.D.Pa.2004) ("The Restatement (Second) of Torts requires a victim of slander per se to make some showing of general damage ...."); *Walker,* 634 A.2d at 242 ("Under the Second Restatement, a plaintiff in a slander *per se* case must show 'general damages': proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both."). Stated in another way, "a defendant who publishes a statement which can be considered slander *per se* is liable for the proven, actual harm the publication causes." *Walker,* 634 A.2d at 244; *see also* Restatement (Second) of Torts § 570.

 Whether a communication is capable of bearing a defamatory meaning is a question for the Court. *Smith v. IMG Worldwide, Inc.,* 437 F.Supp.2d 297, 307 (E.D.Pa.2006) (DuBois, J.) ("It is the role of the Court to determine whether the statements at issue are capable of a defamatory meaning." (citation omitted)); *see also Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 461 (1984). Pennsylvania law defines a publication as defamatory "if it is intended to harass the reputation of another so as to lower him or her in the estimation of the community or if it tends to deter third persons from associating or dealing with him or her." *Walker,* 634 A.2d at 240 (citations omitted). To make this determination, the Court "must consider not only the language of the statements, but also the context in which they were published." *Clemente,* 749 F.Supp. at 676 (citing *Pierce v. Capital Cities Commc'ns, Inc.,* 576 F.2d 495, 502 (3d Cir.1978)). The Court must also "evaluate 'the effect [the statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" *Tucker v. Fischbein,* 237 F.3d 275, 282 (3d Cir.2001) (citing *Corabi v. Curtis Pub'g Co.,* 441 Pa. 432, 273 A.2d 899, 907 (1971), *overruled on other grounds* by *Dunlap v. Phila. Newspapers, Inc.,* 301 Pa.Super. 475, 448 A.2d 6 (1982)).

From a review of the record and plaintiffs' Complaint, the Court has identified five potentially defamatory statements or conversations in which potentially defamatory statements were made. The Court will address each in turn.

#### a. Mrs. Schlarbaum's Telephone Call to Captain Creams

In early 2007, Mrs. Schlarbaum made a telephone call to Captain Creams, a California-based strip club where Ms. Rossi was at one time employed. (Defs.' Mot. 18–19; Pls.' Resp. 4.) She spoke with a Captain Creams employee named Regina Villareal (also known as Gina). (Defs.' Mot. 18–19; Villareal Aff., Aug. 1, 2008, Ex. 5 to Pls.' Resp.) The parties dispute the content of Mrs. Schlarbaum's statements during that telephone call. In an affidavit submitted by Ms. Villareal, she states that Mrs. Schlarbaum said that Ms. Rossi was a prostitute who had been arrested in Pennsylvania for prostitution. (Villareal Aff. ¶¶ 5–8). Ms. Rossi confirmed in her deposition Ms. Villareal's version of the contents of the telephone call. (Rossi Dep. 49:15–20, June 25, 2008, Ex. B. to Defs.' Mot.) Mrs. Schlarbaum, in her deposition, contradicted Ms. Rossi's testimony. Mrs Schlarbaum testified that she only asked about the club's policy regarding dancers entertaining men in hotel rooms and that she did not mention Ms. Rossi. (Janet Schlarbaum Dep. 132:22–138:1, July 15, 2008, Ex. M to Defs.' Mot.) She also expressly denied Rossi's allegations regarding the content of the telephone call. (*Id.* at 221:23–222:16.)

In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990). Thus, for purposes of this analysis, the Court accepts Ms. Villareal's and Ms. Rossi's version of the conversation. In their account, Mrs. Schlarbaum stated that Ms. Rossi was a prostitute with a criminal record. This statement is capable of bearing a defamatory meaning and qualifies as slander *per se* as imputing to Ms. Rossi a criminal offense and serious sexual misconduct. As

such, Ms. Rossi need only present evidence of general damages—harm to her reputation or personal humiliation.

In the Complaint, plaintiffs allege that "[d]efendant's slanderous remarks caused immense harm to Plaintiff's business and irreparable damage to her reputation." (Compl. ¶ 102.) The evidence of harm to Ms. Rossi's reputation or personal humiliation is found in Ms. Rossi's deposition. Ms. Rossi testified that after Mrs. Schlarbaum's telephone call, she "was never able to get [ ] prime time" at Captain Creams. (Rossi Dep. 185:13–185:24.) She also testified that her business had been affected by Mrs. Schlarbaum's actions, and she "was very scared about Janet." (Rossi Dep. 77:23–78:21.) The Court finds that plaintiffs have provided sufficient evidence that Mrs. Schlarbaum's statements to Ms. Villareal affected Ms. Rossi's professional reputation, caused her to suffer personal humiliation, or both.

The Court also concludes that plaintiffs have produced sufficient evidence to demonstrate all of the other elements of the claim of defamation for Mrs. Schlarbaum's conversation with Ms. Villareal. *See* 42 Pa.C.S.A. § 8343(a)(1)-(7). With respect to the second element, plaintiffs have offered sufficient evidence to demonstrate publication based on Ms. Villareal's affidavit, which stated that Mrs. Schlarbaum made the alleged remarks to her. (Villareal Aff. ¶¶ 5–8). Third, the alleged statements made by Mrs. Schlarbaum clearly applied to Ms. Rossi as Mrs. Schlarbaum mentioned Ms. Rossi in the statements. (*Id.*) With respect to the fourth element, Ms. Villareal clearly understood that the statements had a defamatory meaning. (*Id.*) Fifth, the evidence presented supports a finding that Ms. Villareal understood that Mrs. Schlarbaum's alleged remarks applied to Ms. Rossi because Ms.

Villareal later repeated the comments to Ms. Rossi. (*Id.* ¶ 10.)

■ With respect to the seventh element, defendants argue that Mrs. Schlarbaum cannot be held liable for saying that Ms. Rossi is a prostitute as this statement is true. (Defs.' Mot. 46–49.) Under Pennsylvania law, "[t]ruth is an absolute defense to defamation...." *Bobb v. Kraybill,* 354 Pa.Super. 361, 511 A.2d 1379, 1380 (1986) (citation omitted); *see also Bakare v. Pinnacle Health Hosps.,* 469 F.Supp.2d 272, 298 (M.D.Pa.2006) (construing Pennsylvania law); 42 Pa.C.S.A. § 8343(b)(1) (stating that, when the issue is properly raised, the defendant has the burden of proving the "truth of the defamatory communication"). While the Court declines to rule on whether Ms. Rossi was, in truth, a prostitute, defendants' argument does not shield Mrs. Schlarbaum from liability. According to Ms. Villareal's affidavit, Mrs. Schlarbaum also accused Ms. Rossi of having been arrested in Pennsylvania for prostitution. (Villareal Aff. ¶ 7.) Defendants have not argued that this statement is true. Moreover, Mrs. Schlarbaum had no reason to believe that such a statement was true as Mr. Schlarbaum testified that he did not tell Mrs. Schlarbaum that Ms. Rossi had a criminal record. (Mark Schlarbaum Dep. 128:16–19, July 14 2008, Ex. N to Defs.' Mot.) Thus, the defense of truth fails with respect to that part of the alleged conversation in which Mrs. Schlarbaum said that Ms. Rossi was arrested for prostitution.

Based on the foregoing analysis, the Court concludes that plaintiffs have provided sufficient evidence to support each element of the claim of defamation with respect to Mrs. Schlarbaum's conversation with Ms. Villareal. As there are genuine issues of material fact, the Court denies defendants' motion with respect to the statements made during this conversation.

### b. Mrs. Schlarbaum's Telephone Call to Cheerleaders

Also in early 2007, Mrs. Schlarbaum called Cheerleaders, a Philadelphia-based strip club where Ms. Rossi had been employed. (Defs.' Mot. 18–19; Pls.' Resp. 4.) Mrs. Schlarbaum spoke with a Cheerleaders employee named Alycia. (Defs.' Mot. 19; Rossi Dep. 186:1–187:3.) The evidence presently before the Court as to the contents of this telephone call is found in the depositions of Mrs. Schlarbaum and Ms. Rossi. In her deposition, Ms. Rossi related what Alycia said to her about the telephone call from Mrs. Schlarbaum. (Rossi Dep. 186:1–187:3.) While such statements are hearsay, the Third Circuit has held that hearsay evidence may be considered at the summary judgment stage if the "declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'" *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir.1990) (citing *Williams v. Borough of West Chester,* 891 F.2d 458, 465–66 n. 12 (3d Cir.1989)). As plaintiffs could simply produce Alycia at trial to give this testimony, the Court will consider Ms. Rossi's hearsay testimony. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993).

Ms. Rossi testified that Mrs. Schlarbaum "said the same accusations" to Alycia as she had made to Ms. Villareal. (Rossi Dep. 49:21–24.) Mrs. Schlarbaum disputed this version of the contents of the telephone call, testifying that she never mentioned Ms. Rossi when she called Cheerleaders. (Janet Schlarbaum Dep. 138:2–139:19). Thus, the analysis of the statements made by Mrs. Schlarbaum to Ms. Villareal also applies to the statements she made to Alycia. As discussed in Part V.E.1.a, *supra,* such statements

are capable of defamatory meaning and qualify as slander *per se.*

Plaintiffs have produced evidence in support of each of the elements of a cause of action for defamation as to Mrs. Schlarbaum's conversation with Alycia at Cheerleaders. *See* 42 Pa.C.S.A. § 8343(a). The evidence of record on this issue raises several issues of material fact. Thus, the Court denies defendants' motion with respect to these statements made by Mrs. Schlarbaum.

### c. Mrs. Schlarbaum's Voicemails for Mr. DesPres

Mrs. Schlarbaum left two voicemails for Mr. DesPres. In one, she identifies herself as a reporter named Tara Belize; a transcript of this voicemail is included as Exhibit 6 to plaintiffs' Response. In the voicemail, Mrs Schlarbaum states that "as I was doing my research, I noticed that [Jennifer Nicole Lee] had invested $100,000 into Fiu Fiu . . . ." (Voicemail from Janet Schlarbaum to DesPres, Ex. 6 to Pls.' Resp.) Mrs. Schlarbaum also states that "as I investigated that company further, I found that the owner, or the co-owner of it, a woman by the name of Jacqueline Rossi, is also a strip club dancer . . . ." (*Id.*) In the other voicemail, Mrs. Schlarbaum identifies herself as a reporter named Tynisa Trapps. A transcript of this voicemail is included as Exhibit 8 to plaintiffs' Response. In the voicemail, Mrs. Schlarbaum states that "as I'm doing some research on the article [about Jennifer Nicole Lee], it's come to my attention that Jacqueline Rossi, who was her business partner . . . is actually a stripper and working in strip clubs in the California area . . . ." (Voicemail from Janet Schlarbaum to DesPres, Ex. 8 to Pls.' Resp.) She also states that Ms. Rossi is not "pioneering for women." (*Id.*)

■ Applying the burden of proof in defamation actions, as established by 42 Pa.C.S.A. § 8343, none of the statements

in these voicemails support a cause of action for defamation. The statement that Mrs. Schlarbaum noticed that Ms. Lee had invested $100,000 in Fiu Fiu does not satisfy the third element of section 8343(a)—that the communication applies to Ms. Rossi. *See* § 8343(a)(3). As neither party would dispute the truth of the statement that Ms. Rossi is a strip club dancer or a stripper, these statements cannot be defamatory. *Bobb,* 511 A.2d at 1380 ("Truth is an absolute defense to defamation in Pennsylvania." (citations omitted)); *see also* 42 Pa.C.S.A. § 8343(b)(1) (stating that, when the issue is properly raised, the defendant has the burden of proving the "truth of the defamatory communication"). These statements fails to meet the first element of section 8343(a)—that the communication has a defamatory character. *See* § 8343(a)(1).

■ The statement that Ms. Rossi is not "pioneering for women" is a statement of opinion. "[E]xpressions of opinion are not actionable unless they imply undisclosed, false and defamatory facts." *Smith,* 437 F.Supp.2d at 308 (citations omitted); *see also* Restatement (Second) of Torts § 566 (1977) ("[A] statement [of opinion] is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."). This, without more, cannot support a cause of action for defamation. Accordingly, the Court grants defendants' motion with respect to the statements in these two voicemails.

### d. Mrs. Schlarbaum's Telephone Conversations with Ms. Lee

According to the deposition testimony of Ms. Lee, she spoke on the telephone with Mrs. Schlarbaum twice in early 2007. (Lee Dep. 31:20–24, May 8, 2008, Ex. R to Defs.' Mot.) Mrs. Schlarbaum testified that she told Ms. Lee about the hotel meetings between Mr. Schlarbaum and Ms. Rossi.

(Janet Schlarbaum Dep. 154:9–163:21.) Ms. Lee's testimony confirmed Mrs. Schlarbaum's description of the content of their conversations. (Lee Dep. 14:20–15:2, 30:16–31:15). In addition, Ms. Lee testified that Mrs. Schlarbaum warned her that Ms. Rossi was telling people in strip clubs that Ms. Lee had given Ms. Rossi a loan of $100,000 as an investment in Fiu Fiu. (*Id.* at 15:2–16:3.) Ms. Lee disputes that statement; she said that she invested a few thousand dollars in Fiu Fiu but not as much as $100,000. (*Id.*) As discussed in Part V.B, *supra*, the parties dispute whether Ms. Rossi told others about Ms. Lee's investment in Fiu Fiu.

A statement is defamatory "if it is intended to harass the reputation of another so as to lower him or her in the estimation of the community or if it tends to deter third persons from associating or dealing with him or her." *Walker*, 634 A.2d at 240 (citations omitted). Applying this definition, the Court finds that Mrs. Schlarbaum's statements to Ms. Lee about Ms. Rossi's behavior are capable of bearing defamatory meaning. Viewing the facts in the light most favorable to plaintiffs—the party opposing summary judgment—Mrs. Schlarbaum's statements may have been intended to injure Ms. Rossi's reputation and to deter Ms. Lee from doing business with Ms. Rossi. Moreover, according to Ms. Lee's deposition testimony, the statements had such an effect, causing Ms. Lee to alter her relationship with Ms. Rossi and Fiu Fiu. (Lee Dep. 19:22–20:11.) Such statements also qualify as slander *per se*, as accusing the co-owner of a business of sharing information about investors without their consent imputed to Ms. Rossi a "matter incompatible with her business, trade, profession, or office." Restatement (Second) of Torts § 570; *see also Chicarella*, 494 A.2d at 1115 n. 5. As such, plaintiffs need only prove general damages, such as damage to Ms. Rossi's professional reputation or personal humiliation. Ms. Lee's testimony that her relationship with Ms. Rossi was over after her telephone conversations with Mrs. Schlarbaum is sufficient evidence at the summary judgment stage to establish general damages. (Lee Dep. 19:22–20:11.)

The Court also concludes that plaintiffs have produced sufficient evidence to demonstrate all of the other elements of the claim of defamation for Mrs. Schlarbaum's conversations with Ms. Lee. With respect to the second element, plaintiffs have offered sufficient evidence to demonstrate publication based on Ms. Lee's deposition testimony. (Lee Dep. 18:23–19:18). Third, the alleged statements made by Mrs. Schlarbaum clearly applied to Ms. Rossi as Mrs. Schlarbaum mentioned Ms. Rossi in the statements. (*Id.*) With respect to the fourth element, Ms. Lee clearly understood that the statements had a defamatory meaning, testifying that she found out from Mrs. Schlarbaum that Ms. Rossi was "pretty much a prostitute." (*Id.* at 62:20–63:8) Fifth, the evidence presented supports a finding that Ms. Lee understood that Mrs. Schlarbaum's alleged remarks applied to Ms. Rossi because Ms. Lee altered her relationship with Ms. Rossi as a consequence of Mrs. Schlarbaum's telephone calls. (Lee Dep. 19:22–20:11.) With respect to the seventh element—abuse of a privilege or a justification—while truth would provide Mrs. Schlarbaum with a defense, the parties dispute the truth of Mrs. Schlarbaum's statements. *See supra* Part V.B.

Based on the foregoing analysis, the Court concludes that plaintiffs have provided sufficient evidence to support each element of the claim of defamation with respect to Mrs. Schlarbaum's conversations with Ms. Lee. The evidence on that issue raises genuine issues of material fact. Thus, the Court denies defendants' motion

with respect to the statements made by Mrs. Schlarbaum during her two conversations with Ms. Lee.

### 2. Count XII (Libel)

 Libel is the written form of defamation. *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520, 522 (1987) (internal citations omitted). "Libel is maliciously *written or printed material* which tends to blacken a person's reputation or to expose the person to public hatred, contempt, or ridicule or injure the person in his or her business or profession." *Id.* (emphasis added) (citation omitted).

 The allegedly defamatory statements that survive summary judgment, as discussed in Part V.E.1, *supra,* were oral, not written. These statements, if found to be defamatory, are properly classified as slander, not libel. Accordingly, the Court grants defendants' motion with respect to Count XII in which plaintiffs aver a cause of action in libel.

## VI. CONCLUSION

For all of the foregoing reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment. The Court denies defendants' motion with respect to plaintiffs' tortious interference with contractual relation claim and certain allegedly defamatory statements. The Court grants defendants' motion in all other respects.

An appropriate Order follows.

### *ORDER*

AND NOW, this 29th day of January, 2009, upon consideration of Defendants' Motion for Summary Judgment (Document No. 35, filed September 17, 2008); Exhibits to Defendants' Motion for Summary Judgment (Document Nos. 36–40 filed September 18, 2008); Plaintiffs' Reply to Defendants' Motion for Summary Judgment (Document No. 41, filed October 1, 2008); the Affidavit of Regina Villareal of August 1, 2008 (Document No. 42, filed October 1, 2008); and Defendants' Reply Memorandum in Support of Summary Judgment (Document No. 43, filed October 8, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. With respect to Count I (Negligence), the motion is **GRANTED;**

2. With respect to Count V (Torious Interference with Contractual Relationship), the motion is **DENIED;**

3. With respect to Count VI (Tortious Interference with Economic Advantage), the motion is **GRANTED;**

4. With respect to Count VII (Invasion of Privacy), the motion is **GRANTED;**

5. With respect to Count X (Defamation) and Count XI (Slander), the motion is **GRANTED IN PART** and **DENIED IN PART,** as follows:

 a. With respect to the statements made by Mrs. Schlarbaum during her telephone call with Ms. Villareal, the motion is **DENIED;**

 b. With respect to the statements made by Mrs. Schlarbaum during her telephone call with Alycia, the motion is **DENIED;**

 c. With respect to the statements made by Mrs. Schlarbaum in the two voicemails left for Mr. DesPres, the motion is **GRANTED;**

 d. With respect to the statements made by Mrs. Schlarbaum during her two telephone calls with Ms. Lee, the motion is **DENIED;**

6. With respect to Count XII (Libel), the motion is **GRANTED.**

**IT IS FURTHER ORDERED** that a separate Scheduling Order will issue this date covering the claims as to which Defendants' Motion for Summary Judgment

was denied—Count V (Tortious Interference with Contractual Relationship); and Count X (Defamation) and Count XI (Slander) with respect to the statements made by Mrs. Schlarbaum during her telephone call with Ms. Villareal, with respect to the statements made by Mrs. Schlarbaum during her telephone call with Alycia, and with respect to the statements made by Mrs. Schlarbaum during her two telephone calls with Ms. Lee.

## ORDER & MEMORANDUM

### ORDER

**AND NOW,** this 20th day of February, 2009, upon consideration of Defendant's Motion for Reconsideration of Motion for Summary Judgment (Document No. 47, filed February 6, 2009), **IT IS ORDERED** that Defendant's Motion for Reconsideration of Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. Defendants' Motion for Reconsideration with respect to Count V, Tortious Interference with Contractual Relation, is **DENIED;**

2. Defendant's Motion for Reconsideration with respect to Counts X and XII, Defamation and Slander, is **GRANTED IN PART** and **DENIED IN PART,** as follows:

a. With respect to the statements made by Janet Schlarbaum in her conversations with Regina Villareal and with Alycia, the motion is **DENIED;**

b. With respect to the statements made by Janet Schlarbaum in her two conversations with Jennifer Nicole Lee, the motion is **GRANTED** to the extent that the Court will reconsider how the statements made during these conversations should be characterized—as defamatory statements or as evidence of the tortious interference with contractual re-

lationship claim—after it hears all of the evidence in context at trial;

3. Defendants' Motion for Reconsideration is **DENIED** in all other respects.

## MEMORANDUM

### I. INTRODUCTION

A detailed factual and procedural history is included in the Court's Memorandum and Order of January 29, 2009. *See* Mem. & Order of Jan. 29, 2009, at 1–5 (Doc. No. 45); *Rossi v. Schlarbaum,* 600 F.Supp.2d 650, 653–57, 2009 WL 222418, at *1–4 (E.D.Pa.2009). On September 12, 2007, plaintiffs filed a Complaint naming as defendants Mark Schlarbaum; Janet Schlarbaum; Schlarbaum Capital Management, L.P.; and S & S Investment Partners, L.P. (Doc. No. 1, filed Sept. 12, 2007.). The Complaint alleged that defendants committed multiple torts. (*Id.*).

On October 24, 2007, defendants filed a Motion to Dismiss. (Doc. Nos. 6 & 7, filed Oct. 24, 2007.) By Order and Memorandum dated February 20, 2008, the Court granted in part and denied in part defendants' motion. Order & Mem. of Feb. 20, 2008 (Doc. No. 25); *Rossi v. Schlarbaum,* No. 07–CV–3792, 2008 WL 483217 (E.D.Pa. Feb. 20, 2008). Following the Court's ruling, these counts remained: Count I (Negligence), as asserted by plaintiff Rossi against defendant Mark Schlarbaum; Count V (Tortious Interference with Contractual Relationship) as pled; Count VI (Tortious Interference with Economic Advantage) (as pled); Count VII (Invasion of Privacy) (as pled); and Counts X through XII (Defamation, Slander, and Libel) (as pled).

On September 17, 2008, defendants filed a Motion for Summary Judgment seeking entry of judgment in their favor on all remaining counts. (Doc. No. 35, filed Sept. 17, 2008.) The Court granted in part

and denied in part the motion. Mem. & Order of Jan. 29, 2009; *Rossi v. Schlarbaum*, 2009 WL 222418. Following the Court's ruling, these counts remained: Count V (Tortious Interference with Contractual Relationship) and Counts X and XI (Defamation and Slander) with respect to the statements made by Janet Schlarbaum during her telephone conversation with Regina Villareal, the statements made by Janet Schlarbaum during her telephone conversation with Alycia, and the statements made by Janet Schlarbaum during her two telephone conversations with Jennifer Nicole Lee.

On February 6, 2009, defendants filed the instant Motion for Reconsideration of Motion for Summary Judgment. (Doc. No. 47, filed Feb. 6, 2009). In the motion, defendants seek entry of judgment in their favor on all remaining counts.

## II. DISCUSSION

Three situations justify granting a motion for reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court issued its decision; or (3) the need to correct a clear error of law or fact or to prevent "manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citation omitted); *Enigwe v. United States Dist. Ct. for the Eastern Dist. of Pa.*, No. 05–CV–3751, 2006 WL 2884433, at *1 (E.D.Pa. Oct. 6, 2006) (citations omitted). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa. 1995) (citation omitted).

Defendants have not cited an intervening change of law, and they have not presented new evidence not available when the Court issued its Memorandum and Order. In short, those grounds for reconsid-

eration are inapplicable to this case. Defendants argue that reconsideration is necessary to correct a clear error of law or fact or to prevent "manifest injustice."

With respect to Count V, the claim of tortious interference with a contractual relationship, defendants argue that plaintiffs did not produce sufficient evidence of damages to survive a motion for summary judgment. (Defs.' Mot. 2–5.) As the Court stated in its Memorandum and Order of January 29, 2009, Ms. Lee testified that, as a consequence of Mrs. Schlarbaum's telephone calls, she altered her relationship with plaintiffs. *See* Mem. & Order of Jan. 29, 2009, at 15–16 (Doc. No. 45); *Rossi v. Schlarbaum*, 600 F.Supp.2d 650, 661–62, 2009 WL 222418, at *9 (E.D.Pa.2009). While the extent of the change and whether, in fact, any change occurred is disputed by the parties, the Court finds that the deposition testimony of Ms. Lee is sufficient evidence of damages to create a genuine issue of material fact. Accordingly, the motion seeking reconsideration of the Court's ruling with respect to Count V is denied.

With respect to the defamation and slander claims regarding Mrs. Schlarbaum's telephone conversations with Ms. Villareal and Alycia, employees of strip clubs where Ms. Rossi had been employed, defendants argue that the statements made by Mrs. Schlarbaum during these telephone calls were true and that plaintiffs did not provide evidence of damage caused by these telephone calls. (Defs.' Mot. 14–15.) Specifically, defendants take the position that because the statement that Ms. Rossi was a prostitute is true—an argument on which the Court declines to rule—it is of no moment that Mrs. Schlarbaum also said that Ms. Rossi was arrested for prostitution. (*Id.* at 14.) They contend that "[t]here is no additional material negative impact derived from the statement that

she was also arrested for prostitution." (*Id.*) The Court does not agree. For the reasons stated in the Memorandum and Order of January 29, 2009, the Court concludes that plaintiffs have provided sufficient evidence of damages caused by these telephone calls. *See* Mem. & Order of Jan. 29, 2009, at 22–25; *Rossi v. Schlarbaum,* 2009 WL 222418, at *12–14. Accordingly, there is no error of law or fact that requires correcting, and there is no manifest injustice. The motion seeking reconsideration of the Court's ruling with respect to the statements made during these telephone calls is denied.

With respect to the defamation and slander claims regarding Mrs. Schlarbaum's telephone conversations with Ms. Lee, defendants argue that any comments about Ms. Rossi's sexual activity were true, that Mrs. Schlarbaum's statement that Ms. Rossi was telling people in strip clubs that Ms. Lee had invested $100,000 in Fiu Fiu did not qualify as slander *per se,* and that plaintiffs did not provide sufficient evidence of damages. (Defs.' Mot. 6–13.) For the reasons stated in the Memorandum and Order of January 29, 2009, the Court concludes that plaintiffs have provided sufficient evidence of damages caused by these telephone calls to withstand summary judgment. *See* Mem. & Order of Jan. 29, 2009, at 22–25; *Rossi v. Schlarbaum,* 2009 WL 222418, at *16. Whether Mrs. Schlarbaum's statements to Ms. Lee about Ms. Rossi's sexual activities and about Ms. Rossi's disclosure of Ms. Lee's investment to other individuals are defamatory is a close question. Even if these statements are not defamatory, however, they are evidence that supports plaintiffs' claim of tortious interference with their contractual relationship with Ms. Lee. As the statements are clearly admissible, the Court will reconsider how they should be characterized—as defamatory statements or as evidence of the tortious interference claim—after it hears all of the evidence in context at trial. Defendants' motion seeking reconsideration with respect to Mrs. Schlarbaum's conversations with Ms. Lee is granted to this extent.